**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OPLUS TECHNOLOGIES, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-cv-8539 |
| | ) | |
| SEARS HOLDING CORPORATION and | ) | Judge Robert M. Dow, Jr. |
| VIZIO, INC., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Oplus Technologies, Ltd. ("Oplus") filed suit against Defendants Sears Holding Corporation ("Sears") and Vizio, Inc., alleging patent infringement. Vizio moves [36] to sever the patent infringement claims against it from the claims alleged against Sears, transfer the claims against Vizio to the U.S. District Court for the Central District of California, and stay the case involving the remaining claims against Sears, pending the outcome of the Vizio case. For the reasons set forth below, the Court grants Vizio's motion to sever and transfer claims against Vizio and stay claims against Sears [36] in its entirety.

**I.    Background**

Plaintiff Oplus is a foreign corporation organized under the laws of Israel. Defendant Vizio, Inc. is a California corporation with its principal place of business in Irvine, California, while Defendant Sears is a Delaware Corporation with its principal place of business in Hoffman Estates, Illinois. This dispute involves two patents owned by Oplus: U.S. Patent No. 6,239,842, entitled "Method of De-Interlacing Video Signals Using a Mixed Mode Spatial and Temporal Approximation Technique" (the '842 Patent), and U.S. Patent No. 7,271,840, entitled "Method for Determining Entropy of a Pixel of a Real Time Streaming Digital Video Image Signal, and

Applications Thereof" (the '840 Patent).  The '842 Patent was issued on May 29, 2001, while the '840 Patent was issued on September 18, 2007.  Yosef Segman, the inventor of these patents, is a resident of Israel.  Oplus alleges that Defendants have sold or offered to sell products that infringe these patents within the Northern District of Illinois and further alleges venue is proper pursuant to 28 U.S.C. § 1400(b), which provides:  "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

In its amended complaint, Oplus claims that Vizio infringed its patents by making, using, importing, selling or offering to sell, and/or by contributing to others' use of audio and video products which use methods that fall within the scope of its patents.  Oplus also claims that Sears infringed its patents by importing, selling, and/or offering to sell infringing Vizio products.  According to Vizio, Sears is a former Vizio customer, but has not been supplied with Vizio televisions since January 2010, approximately two years prior to the filing of Plaintiff's lawsuit.  Vizio also maintains that its sales of the alleged infringing products to Sears constituted a very minor portion of Vizio's business during the relevant period.  According to Vizio's declarations (and not rebutted by Plaintiff with evidence), Sears had no involvement in the design, development, manufacture or any other aspects of the accused Vizio products.  Furthermore, Vizio accepted Sears's tender of defense and request for indemnity, and Sears is represented in this action by Vizio's counsel.

Vizio moves to sever the infringement claims against it from the claims against Sears, arguing that Sears is merely a "peripheral defendant" and that the claims alleged by Oplus against Sears were brought solely to establish venue in the Northern District of Illinois.  Vizio

2

further moves to transfer the claims against it to the Central District of California, where Vizio is located, and to stay the claims remaining in the Northern District of Illinois against Sears pending the resolution of the transferred claims against Vizio.  Oplus opposes Vizio's requests.

## II.      Analysis

### A.      Motion to Sever and Stay

Federal Rule of Civil Procedure 21(a)(2) permits defendants to be joined in a single action if:  "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Beyond these two requirements, consideration is given as to whether joinder would result in prejudice against any parties or otherwise cause delay.  *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 252, (N.D. Ill. 2011).  If parties have been improperly joined as defendants, the court may sever the claims pursuant to Rule 21.  Rule 21 provides, "On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  The district court has "broad discretion whether to sever a claim under Rule 21."  *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).  Claims may be severed, and the severance may create two separate proceedings, provided that the claims are "discrete and separate."  *Gaffney v. Riverboat Services of Indiana, Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (quoting *Rice*, 209 F.3d at 1016).

As in deciding whether to sever claims, a court also has broad discretion in deciding whether to stay proceedings.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of

time and effort for itself, for counsel, and for litigants." See, *e.g., Tex. Independent Producers & Royalty Owners Ass'n v. EPA,* 410 F.3d 964, 980 (7th Cir. 2004) (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254, (1936)).  When ruling on a motion to stay proceedings, courts consider the following:  "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Tap Pharmaceutical Products, Inc. v. Atrix Laboratories, Inc.*, 2004 WL 422697, at *1 (N.D. Ill. March 3, 2004).

Vizio argues that the claims alleged against it should be severed from the claims alleged against Sears because the Sears claims are unnecessary to resolve the issue of infringement. Vizio asserts that Sears "has nothing substantive to offer this infringement action," but was named as a party by Oplus simply to establish venue in the Northern District of Illinois.  "It is not uncommon for courts to sever claims by patent holders against peripheral defendants in order to transfer the litigation to a more appropriate forum." *Calmedica, LLC v. Novoste Corp.*, 2004 WL 413296, at *1 (N.D. Ill., Jan. 30, 2004) (citing *Safe Bed Technologies Co. v. KCI USA, Inc.*, 2002 WL 1769991 (N.D. Ill. July 31, 2002); *Ambrose v. Steelcase, Inc.*, 2002 WL 1447871 (N.D. Ill. July 3, 2002)).  Defendants are "peripheral" when they lack relevant and material information and were selected to procure venue. *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 2010 WL 3516106, at *2 (N.D. Ill. Sept. 1, 2010).  Courts in this district repeatedly have held that "joinder of 'peripheral' defendants to prevent the transfer of an action to a more appropriate venue is improper." *Id.*  As noted in *Spread Spectrum*, the remedy is to sever and stay the claims against the peripheral defendant pursuant to Fed. R. Civ. P. § 21:

Kodak's Customers will add nothing to plaintiff's infringement action against Kodak, and it is obvious that plaintiff has attempted to establish proper venue in the Northern District of Illinois by adding Kodak's customers to the instant action * * * * because Kodak's customers merely use a Kodak product, they have nothing substantive to offer during plaintiff's action against Kodak and likely do not even understand how the product software actually works and will not be helpful to determine whether Kodak's Staccato® product infringes the '623 patent.   Consequently, they are merely peripheral in the litigation between plaintiff and Kodak. For these reasons, Kodak's motion to sever plaintiff's claims against Kodak from plaintiff's claims against Kodak's Customers is granted.

*Id.* at 3.

Sears appears to be such a peripheral defendant.  According to Vizio and not disputed by Plaintiff, Vizio's sales of the accused televisions to Sears constituted a very minor portion of Vizio's business during the relevant period.  Furthermore, Vizio attests (and Plaintiff does not present evidence to the contrary) that Sears had no involvement in the design, development, manufacture, or any other technical aspects of the accused Vizio products.  Thus, it follows that Sears is not likely to have information bearing on Oplus's infringement claims or Vizio's defenses.  Moreover, Sears is one customer of many and has not sold Vizio televisions since January 2010.  When a plaintiff chooses only one reseller of the accused product out of many, the "inference here is irresistible that the principal reason [the customer defendant] has been sued is to establish venue in the Northern District of Illinois." *Ambrose v. Steelcase, Inc.,* 2002 WL (N.D. Ill. July 3, 2002); see also *Burroughs Corp. v. Newark Elecs. Corp.*, 317 F. Supp. 191, 193 (N.D. Ill. 1970) (granting motion to sever and transfer on the ground that customer defendant was not the party in interest).

Oplus opposes severance, arguing that "Sears * * * is located in this district and has as much involvement in the 'design, development and manufacture' of the accused televisions as does Vizio." Notably, Oplus does not cite any evidence to support this assertion.  Oplus does not

deny that Sears has no relevant information regarding the accused products.  Specifically, Oplus does not dispute that: (1) Sears has only been sued in this action based on its sale of alleged infringing VIZIO televisions; (2) Sears has not sold Vizio televisions for over two years; (3) Sears's liability in this suit rests on Vizio's liability; and (4) Vizio is indemnifying Sears for Oplus's claims against it in this action.  Moreover, even if Vizio's televisions are manufactured overseas (as many products sold by American companies are), Oplus has not put forth any evidence to dispute Vizio's assertions that it conceives and develops its products and oversees their implementation by third party designers and manufacturers.

The naming of an insignificant party as a defendant in an action simply to establish venue in the chosen district is impermissible forum shopping.   Here, the obvious reason Oplus joined Sears in this action was to establish venue in the Northern District of Illinois.  See *Spread Spectrum*, 2010 WL 3516106, at *3.  Because Sears is merely peripheral to this lawsuit, case law counsels that the claims against Sears should be severed from the claims against Vizio.  See *Ambrose*, 2002 WL 1447871, at 6-7; *Thermapure, Inc. v. Temp-Air, Inc.*, 2010 WL 5419090 (N.D. Ill. Dec. 22, 2010).

Further, while the action against Vizio is pending, the Court will stay the action against Sears. See, *e.g., Spread Spectrum*, 2010 WL 3516106, at *6; *Thermapure, Inc., Inc.*, 2010 WL 5419090 at *9-10.  Oplus's claims against Sears depend on Vizio's liability.  As the court explained in *Card Activation Technologies v. Pier 1 Imports., Inc.*, granting a motion to stay in these circumstances is appropriate because "litigation against * * * the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." 2009 WL 2956926, at *2 (N.D. Ill. Sept. 14, 2009). A stay in this instance benefits judicial economy and serves "the just, speedy and inexpensive disposition of this

6

litigation." *Thermapure, Inc., Inc.*, 2010 WL 5419090 at *10. This is particularly true given Vizio's promise to defend and indemnify Sears in this action. See *Emhart Indus., Inc. v. Universal Instruments Corp.*, 1988 WL 121538, at *1 (N.D. Ill. Nov. 3, 1988) (noting that indemnification further ensured no prejudice to customers, and that severance and staying of case precluded multiplicity of litigation). Vizio is the real party in interest who must defend this infringement suit. All of the substantive issues regarding patent infringement as they relate to the claims against Sears first will be resolved in the action against Vizio—indeed, the resolution of the Vizio action could potentially eliminate the claims against Sears—and this would significantly simplify the issues in the Sears case and substantially reduce the burden of litigation on the parties, as well as the Court. Thus, the claims against Sears will be severed and stayed.

### B.     Motion to Transfer

A district court, "[f]or the convenience of parties and witnesses, in the interest of justice, * * * may transfer any civil action to any other district court where" jurisdiction and venue would have been proper at the time the suit was initiated. 28 U.S.C. § 1404(a); see *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). The moving party has the burden of establishing "that the transferee forum is clearly more convenient," based on the particular facts of the case. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). The district court has the authority to "make whatever factual findings are necessary * * * for determining where venue properly lies." *In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008).

In evaluating § 1404(a) motions, the Court considers: (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of the witnesses, (4) the interests of justice, and (5) the location of the material events giving rise to the case. See *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir. 1996) (listing the first four

statutory factors); see also *Continental Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374, *2-3 (N.D. Ill. Sept. 18, 2009) (elaborating on sub-factors).  The Seventh Circuit teaches that the specified statutory factors "are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case."  *Coffey*, 796 F.2d at 219 n.3; see also *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) (explaining that the broad discretion accorded the trial court is a product of the "in the interest of justice" language). In cases alleging patent infringement, "the location of the infringer's principal place of business is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, its employees, and its documents, rather than upon those of the plaintiff."  *Cooper Bauck Corp. v. Dolby Laboratories, Inc.*, 2006 WL 1735282, at * 5 (N.D. Ill. June 19, 2006) (internal quotations omitted).

The first factor, plaintiff's choice of forum, typically is accorded significant weight, *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003), unless none of the conduct occurred in that forum, *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955). Regarding the second factor, convenience of the parties, courts consider the residences and resources of the parties—in essence, their "abilit[y] to bear the expense of trial in a particular forum."  *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995). Examination of the third factor, convenience of the witnesses, emphasizes "the nature and quality of the witnesses' testimony."  *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 858 (N.D. Ill. 2007).

The fourth factor, interests of justice, captures several considerations, including:

the relative ease of access to sources of proofs; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; the possibility of a view of the premises; and the state of the court

8

calendar both in the District where the case is pending, and in the District to which it is sought to have the case transferred.

*Igoe*, 220 F.2d at 303; see also *Nat'l Presto Indus.*, 347 F.3d at 664 (discussing the "subpoena range" of the district court).  Courts also consider their familiarity with the applicable law and "the desirability of resolving controversies in their locale."  *Rabbit Tanaka Corp. USA v. Paradise Shops, Inc.*, 598 F. Supp. 2d 836, 841 (N.D. Ill. 2009).  And, as previously discussed, the fifth factor, location of material events, becomes comparably more important when it differs from the first factor, plaintiff's choice of forum.  *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007) (citing *Igoe*, 220 F.2d at 304).

The parties agree that venue is proper for all parties in both the transferor and transferee districts, so only the convenience and justice factors require consideration.  As noted above, weight typically is given to the plaintiff's initial choice of forum, particularly when it is the plaintiff's home forum.  However, when the choice of forum lacks a significant connection to the underlying claims, less weight is afforded to the plaintiff's choice.  *Symons Corp. v. Southern Forming and Supply, Inc.,* 954 F.Supp. 184, 186 (N.D. Ill. 1997).  Here, the sales of the accused products occurred in this district, as well as many other districts, and "[s]ales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Anchor Wall Sys., Inc. v. R & D Concrete Products, Inc.,* 55 F.Supp. 2d 871, 874 (N.D. Ill. 1999).  Furthermore, Oplus is an Israeli company with no discernable ties to this district.[1]  The situs of material events clearly is the Central District of California, where Vizio is

---

[1]   The location of Oplus's counsel is irrelevant. *In re Zimmer Holdings, Inc.,* 609 F.3d 1378, 1381 (Fed. Cir. 2010); *Heil Co. v. Curotto Can Co.*, 2004 WL 725737, at * (N.D. Ill. Mar. 30, 2004) (noting that the convenience and location of counsel have never been accorded weight in a transfer analysis).

headquartered and operates its principal place of business.  Therefore, Oplus's choice of the Northern District of Illinois is afforded little weight in this analysis.

Many of the probable witnesses in this action—who have information about the accused products, their marketing, and sales—are located in California.  Vizio represents (and Oplus does not dispute) that Vizio's Vice President of Engineering and co-founder Kenneth Lowe has the most information regarding the development of Vizio's products.  Mr. Lowe works and resides in the Central District of California.  Rob Brinkman, another Vizio witness, also resides in the Central District.  Given that the alleged infringer's witnesses and potentially relevant documents are in California, and that Oplus has no discernable ties to Illinois, the convenience of the parties' factor weighs in favor of transferring the action to California.  *Cooper Bauck*, 2006 WL 1735282, at * 5.

In determining the convenience to the witnesses, the court considers "the nature and quality of the witnesses' testimony with respect to the issues of the case."  *Schwarz v. Nat'l Van Lines, Inc.*, 317 F.Supp.2d 829, 836 (N.D. Ill. 2004).  The convenience of non-party witnesses is more significant to the analysis, since party witnesses are typically required to appear voluntarily.  *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F.Supp.2d 731, 735 (N.D. Ill. 2007).  Oplus has not identified *any* third-party witnesses, let alone any in Illinois.  The Court presumes that Yosef Segman, the inventor of the patents at issue, will be a witness, but he is a resident of Israel with no discernable ties to Illinois and therefore Illinois is no more convenient for him than California.  On the other hand, the chipsets identified by Oplus as infringing are created and supplied by three companies—Genesis Microchip Inc., Integrated Device Technology, and Qualcomm Incorporated—that are headquartered in California.  Vizio attests (and Plaintiff does not dispute) that the representatives of these companies who could be called

10

to testify are located in California.  Given that all of the witnesses identified to date reside in California (and that the only discernable witness on Plaintiff's side resides in Israel), this factor heavily favors Vizio.

With respect to the access to sources of proof, in a patent infringement case such as this, "practicality and convenience are best served when [the case] is prosecuted where the alleged acts of infringement occurred and the defendant has a regular and established place of business so as to facilitate the production and investigation of books, records and other data necessary to the discovery and trial techniques employed in the patent filed." *Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*, 55 F. Supp. 2d 871, 875 (N.D. Ill. 1999); see also *Rudd v. Lux Prods. Corp.*, 2011 WL 148052, at *3 (N.D. Ill. Jan. 12, 2011) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1343-45 (Fed. Cir. 2009)).  As set forth above, the record to date reflects that the primary sources of proof will be the witnesses and documents at Vizio, Genesis, IDT, and Qualcomm. Vizio contends (and Oplus does not dispute) that all of the evidence related to these companies and their witnesses is located in the Central District of California or in other California districts.  Although it is likely that most, if not all, of these documents will be produced electronically, this factor still weighs in favor of Vizio over Oplus. See *Leuders v. 3M Co.*, No. 08–CV–2457, 2008 WL 2705444, at *3 (N.D. Ill. July 9, 2008).

Section 1404(a) also requires courts to consider whether the transfer is in the "interest of justice."  Factors to consider include time to trial, relative familiarity with the applicable law, desirability of resolving disputes in their location, the relationship of the community to the controversy, and the possibility of consolidation. *Research Automation, Inc. v. Schrader-*

*Bridgeport Int'l, Inc.,* 626 F.3d 973, 978 (7th Cir. 2010); *Spread Spectrum*, 2010 WL 3516106 at *5-6; *Thermapure, Inc., Inc.*, 2010 WL 5419090 at *8-9.   Because this case involves federal patent law, the familiarity factor does not apply, as all federal courts are presumed familiar with patent law. *Rudd*, 2011 WL 148052 at *7.

In terms of time to trial, according to the evidence presented by Vizio and not disputed by Oplus, on average, cases in the Central District of California get to trial five months faster than those in the Northern District of Illinois.   According to the Annual Report of the Director of the Administrative Office of the United States Courts for 2011, for the twelve-month period ending March 31, 2011, the Northern District of Illinois handled 7,168 cases, with 134 of those cases going to trial after a median time interval of 24.8 months.   Over this same time period, the Central District of California handled 10,716 cases, with 149 cases going to trial after a median time interval of 19.9 months.

Furthermore, there is a "local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509 (1947); *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 755 (7th Cir. 2008). Because Vizio is headquartered in the Central District of California and maintains its business operations there, and Oplus does not have a connection to either district, the citizens of the Central District of California have a stronger interest in this action against Vizio than the citizens of the Northern District of Illinois. See *Spread Spectrum*, 2010 WL 3516106 at *6.  "[Vizio's] headquarters are in the [Central] District of [California], its employees are in that district, and that district accordingly is where the impact of the adjudication of [Oplus's] claims would be felt." *Thermapure, Inc., Inc.*, 2010 WL 5419090 at *9. Finally, it does not appear likely that the claims against Vizio would be consolidated with Oplus's three other pending patent infringement actions in this district because the defendants in

12

those cases are unrelated to Vizio and different products are accused of infringement. The only potential similarity is that all defendants are accused of infringing the same Oplus patents. "Courts in this district, however, have consistently held that Rule 20(a)'s requirement for a common transaction or occurrence is not satisfied where multiple defendants are merely alleged to have infringed the same patent or trademark." *Thermapure, Inc., Inc.*, 2010 WL 5419090 at *4. In suing each defendant separately, Oplus and its counsel (who also represented *ThermaPure*) implicitly recognized that these defendants, with their different accused products, likely could not be consolidated in the same action. Based this factor, as well as all of the factors discussed above, California clearly is the more convenient forum for this lawsuit.

### III.   Conclusion

For these reasons, Vizio's motion to sever and transfer claims against Vizio and stay claims against Sears [36] is granted in its entirety. The claims that Oplus has alleged against Sears are stayed pending the outcome of Oplus's action against Vizio. The Clerk is directed to transfer the claims asserted by Oplus against Vizio to the United States District Court for the Central District of California.

Dated:  June 15, 2012

_____

Robert M. Dow, Jr.
United States District Judge

13