ADRIAN M. PRUETZ - State Bar No. 118215
apruetz@glaserweil.com
CHARLES C. KOOLE - State Bar No. 259997
ckoole@glaserweil.com
GLASER WEIL FINK JACOBS
 HOWARD AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

ENOCH H. LIANG - State Bar No. 212324
enoch.liang@ltlattorneys.com
STEVEN R. HANSEN - State Bar No. 198401
steven.hansen@ltlattorneys.com
LEE TRAN & LIANG APLC
601 S. Figueroa Street, Suite 4025
Los Angeles, CA 90017
Telephone: (213) 612-3737
Facsimile: (213) 612-3773

*Attorneys for Defendant*
*VIZIO, Inc.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| OPLUS TECHNOLOGIES, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>SEARS HOLDINGS CORPORATION; VIZIO, INC.,<br><br>Defendants. | CASE NO.: CV12-5707 MRP (Ex)<br><br>Hon. Judge Mariana R. Pfaelzer<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VIZIO, INC.'S MOTION FOR PROTECTION FROM SUBPOENA ISSUED IN VIOLATION OF MULTIPLE COURT ORDERS AND PROHIBITING USE OF SUBPOENAED DOCUMENTS**<br><br>DATE:      June 17, 2013<br>TIME:       11:00 a.m.<br>PLACE:     Courtroom 12 |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VIZIO'S MOTION FOR PROTECTION FROM UNLAWFUL SUBPOENA AND PROHIBITING USE OF SUBPOENAED DOCUMENTS

805753

**TABLE OF CONTENTS**

Page

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | Case Background | 3 |
| III. | Oplus Violated the TLC Protective Order to Circumvent This Court's April 3, 2013 Order | 5 |
| IV. | The Subpoena to TLC Seeks Irrelevant Documents in Contravention of the Court's Order Denying Oplus' Motion to Compel | 7 |
| V. | Conclusion | 10 |

Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VIZIO'S MOTION FOR PROTECTION FROM UNLAWFUL SUBPOENA AND PROHIBITING USE OF SUBPOENAED DOCUMENTS

805753

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  131 S. Ct. 2060, 179 L. Ed. 2d 1167 (2011) .............................................................. 9

*Joy Techs., Inc. v. Flakt, Inc.*,
  6 F.3d 770 (Fed. Cir. 1993) ...................................................................................... 8

*NTP, Inc. v. Research In Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005) ................................................................................ 8

*Ricoh Co., Ltd. v. Quanta Computer Inc.*,
  550 F. 3d 1325 (Fed. Cir. 2008) ............................................................................... 8

*Synqor, Inc. v. Artesyn Techs., Inc.*,
  709 F.3d 1365 (Fed. Cir. 2013) ................................................................................ 9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VIZIO'S MOTION FOR PROTECTION FROM UNLAWFUL SUBPOENA AND PROHIBITING USE OF SUBPOENAED DOCUMENTS

805753

# MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to paragraph 32 of the Stipulated Protective Order in the case entitled *IP Innovation LLC, et al. v. VIZIO, Inc., et al.,* Case No. 1:08-cv-00393 (N.D. Ill.) (the "TLC Protective Order" and "TLC case"), defendant VIZIO, Inc. ("VIZIO") respectfully moves this Court for "judicial protection from the enforcement of the subpoena" served on May 3, 2013 (the "Subpoena") by counsel for plaintiff Oplus Technologies, Ltd. ("Oplus") on its former client in that case, Technology Licensing Corp. ("TLC"), in violation of this Court's April 3, 2013 Order and the TLC Protective Order, and for "entry of an appropriate protective order" prohibiting the use of the subpoenaed documents.  In the Subpoena, Oplus seeks confidential VIZIO information protected from use in this case by the TLC Protective Order, from Oplus counsel's own files:

> 1. All Pleadings files, deposition files and accompanying exhibits retained by Outside Counsel pursuant to the Protective Order from the case styled Technology Licensing Corporation et al., v. Vizio, Inc., et al. (Civ. Action No. 1:08-cv-00393), which identify or relate to the use of HQV, MDDi or DCDi technologies by Vizio.

Declaration of Charles C. Koole ("Koole Decl."), ¶2, Exh. A.

Not only have Oplus and its counsel abused the subpoena power in serving the Subpoena for counsel's own files, they have knowingly violated court orders in this and the prior action, and seek confidential VIZIO information that has not been and cannot be shown to have any relevance to this case.

## I.   Introduction

In its April 3, 2013 Order, this Court denied Oplus' motion to compel VIZIO documents related to "Faroudja DCDi," "Silicon HQV," and "MediaTek MDDi" technologies because Oplus failed to provide adequate infringement contentions that even facially linked these technologies to the asserted claims of the patents-in-suit, let alone described how any VIZIO products used such technologies to infringe the Oplus patents.  April 3, 2013 Order, Dkt. No. 121 (attached as Exhibit H to the Koole

Decl.). In its Order, the Court also set forth a "blueprint" by which Oplus could amend its infringement contentions to try to correct the deficiencies. *Id.* at 2. But even after the Court granted Oplus' request to conduct an additional month of discovery, Oplus declined to amend its infringement contentions.

Instead, Oplus counsel called the Court's Order a "rogue order" and chose to make an end-run around it by improperly subpoenaing the same confidential VIZIO information from *its own files* that this Court had refused to compel and despite the fact that this information had been produced by VIZIO subject to a protective order in a prior unrelated action in which Oplus counsel represented a different plaintiff suing on different patents. By improperly using its knowledge of VIZIO's confidential and protected information in the TLC case as a basis for its Subpoena in this case, Oplus counsel knowingly violated the terms of the TLC Protective Order, which provided that VIZIO's confidential information was not to be used, directly or indirectly, other than in that case.

Further, the information that Oplus counsel seeks from the TLC case is demonstrably irrelevant to Oplus' claims in this case. The confidential VIZIO documents are primarily sales documents for VIZIO televisions discontinued well before the Complaint in this action was filed. VIZIO's confidential sales documents are not relevant for purposes of direct infringement because all of the asserted patent claims are method claims, and under well-established Federal Circuit precedent, VIZIO's sale of products cannot infringe a method claim. Thus, confidential documents reflecting sales of prior VIZIO televisions are not relevant to Oplus' claims of direct infringement.

Likewise, the documents sought to be subpoenaed are not relevant for purposes of Oplus' indirect infringement claims, because Oplus cannot show that any VIZIO products that were the subject of the TLC case were sold *after* VIZIO first received notice of the patents-in-suit in December 2011, when Oplus filed this lawsuit. Under

2
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VIZIO'S MOTION FOR PROTECTION FROM UNLAWFUL SUBPOENA AND PROHIBITING USE OF SUBPOENAED DOCUMENTS

805753

well-established Federal Circuit precedent, a party cannot be liable for indirectly infringing a patent before having actual knowledge of the patent.

Finally, to the extent the confidential VIZIO documents generally identify the technologies used in these discontinued VIZIO televisions (which is largely the extent of the technical information VIZIO has about them), the Court's April 3rd Order explains that Oplus' infringement contentions do not provide adequate support for Oplus' assertion that the mere use of HQV, MDDi or DCDi technologies is sufficient to infringe the asserted patent claims. *See* April 3, 2013 Order, Dkt. No. 121.

VIZIO counsel brought all of these issues to the attention of Oplus counsel through written objections to the Subpoena, followed by an in-person conference. Oplus counsel promised to report back whether they would withdraw the Subpoena or oppose this Motion, but characteristically, did not, despite their awareness of the 14-day deadline in which VIZIO was required to file this Motion pursuant to the TLC Protective Order. Declaration of Adrian M. Pruetz ("Pruetz Decl."), ¶2. Unless the Court grants VIZIO protection from enforcement of the Subpoena and enters a protective order prohibiting Oplus' use of any documents obtained pursuant to this Subpoena, Oplus counsel will be in violation of two court orders, and will be in a position to mislead the Court and jury with old, irrelevant sales information about VIZIO televisions that were not even on sale when Oplus filed this case and which Oplus has no basis to claim infringe its patents. Accordingly, the Court should grant VIZIO protection from the enforcement of the Subpoena and enter a protective order prohibiting Oplus from making any use of VIZIO confidential information produced in the unrelated TLC action.

## II. Case Background

On April 3, 2013, this Court denied Oplus' motion to compel documents concerning a broad swath of VIZIO products because of Oplus' deficient infringement contentions. *See* April 3, 2013 Order, Dkt. No. 121. The document requests at issue were directed to any VIZIO products using "Silicon Optix HQV

3
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VIZIO'S MOTION FOR PROTECTION
FROM UNLAWFUL SUBPOENA AND PROHIBITING USE OF SUBPOENAED DOCUMENTS

805753

technology," "Faroudja DCDi technology," and "MediaTek MDDi Motion Adaptive Deinterlacing technology." *Id.*; Joint Stipulation Re: Oplus' Motion to Compel the Production of Documents, dated March 20 2013 at 9 n.2 (Dkt. No. 114). As the Court explained, the purpose of infringement contentions is to provide structure to the entire discovery process by requiring the patentee to crystallize its infringement theory, and avoid discovery excesses by tailoring discovery to the appropriate scope of the case. April 3, 2013 Order at 1-2. The Court also gave Oplus an additional month of discovery during which Oplus could correct its contentions and focus its requests for the discovery it claimed to need. *Id.* at 3.

Oplus declined the opportunity provided by the Court to properly obtain discovery. Instead, Oplus counsel announced its intent to ignore the Court's April 3, 2013 Order by calling it a "rogue order" and subsequently issuing the Subpoena on May 3, 2013 for its own files, seeking the same documents Oplus sought and was denied by this Court in its motion to compel against VIZIO. Koole Decl., ¶3; Koole Decl., ¶2, Exh. A. Under the terms of the TLC Protective Order, VIZIO is required to seek "judicial protection from the enforcement of the subpoena" and/or "entry of an appropriate protective order" from this Court within fourteen calendar days of notice of the Subpoena from TLC counsel.[1] Koole Decl., ¶4, Exh. B, TLC Protective Order at ¶32.

Accordingly, VIZIO informed Oplus on May 10, 2013 that it would bring its derogation of the April 3, 2013 Order to the Court's attention by filing this motion. Pruetz Decl., ¶2. As a result, six weeks after the Court's April 3, 2013 Order and on

---

[1] The terms of the TLC Protective Order state that the subpoenaed party must "give[] prompt notice to counsel for the designating party and permit[] counsel for that party at least fourteen (14) calendar days from receipt of the written notice to intervene and seek judicial protection from the enforcement of the subpoena and/or entry of an appropriate protective order in the action in which the subpoena was issued. " Koole Decl., ¶4, Exh. B, TLC Protective Order at ¶32. While TLC counsel has not formally provided notice to VIZIO counsel under this section, as a caution, VIZIO counsel is filing this Motion within fourteen days of receiving a copy of the Subpoena.

the late afternoon of the last day of discovery, Oplus made a desperate attempt to demonstrate facial compliance with the Court's Order by serving VIZIO with a 14 page letter that cosmetically purports, but utterly fails, to address the numerous deficiencies in Oplus' infringement contentions.[2]  Koole Decl., ¶5, Exh. C.

### III. Oplus Violated the TLC Protective Order to Circumvent This Court's April 3, 2013 Order

As indicated above, Oplus broadly accuses all VIZIO products using three technologies of infringing the patents-in-suit: "Silicon Optix HQV technology," "Faroudja DCDi technology," and "MediaTek MDDi Motion Adaptive Deinterlacing technology."  Koole Decl., ¶6, Exh. D, Oplus' Infringement Contentions at 2:10-23.  However, Oplus' infringement contentions fail to even facially demonstrate a nexus between these technologies and the claims of the patents-in-suit, much less explain how VIZIO's use of these technologies infringes them.

Oplus counsel previously represented the plaintiffs, including TLC, in an earlier patent infringement lawsuit against VIZIO regarding televisions using the same three technologies, but different patents—the TLC case.  Oplus counsel are, therefore, in possession of confidential VIZIO information produced in that action

---

[2] In its letter, Oplus disputes the manner in which VIZIO and the Court reasonably interpreted Oplus' Infringement Contentions.  In particular, Oplus denies that it contends the '842 Patent claims cover "motion adaptive deinterlacing" *generally* or that the '840 Patent claims cover "motion adaptive noise reduction" *generally*.  Koole Decl., ¶5, Exh. C at 4-6.  However, what Oplus did ***not*** do is 1) explain how the accused technologies *necessarily* perform *logical operations* on *linear combinations of the values* listed in the asserted '842 Patent claims (much less explain what those logical operations and linear combinations are), or 2) explain how the accused technologies necessarily perform the claimed entropy calculations in the '840 Patent claims (much less explain what those calculations are).  Instead, Oplus now contends, without providing any coherent explanation, that it is the specific implementations of motion adaptive deinterlacing and motion adaptive noise reduction in VIZIO's TVs which infringes the asserted claims.  Thus, Oplus has done nothing to clarify its hopelessly ambiguous infringement contentions.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VIZIO'S MOTION FOR PROTECTION FROM UNLAWFUL SUBPOENA AND PROHIBITING USE OF SUBPOENAED DOCUMENTS

805753

pursuant to terms of a protective order that prohibited use of those documents except in that action, as follows:

> No person or party *shall directly or indirectly utilize* or disclose any CONFIDENTIAL, ATTORNEYS' EYES ONLY, or CONFIDENTIAL SOURCE CODE - ATTORNEYS' EYES ONLY information obtained pursuant to pretrial discovery in this action, except for the purposes of preparation, trial, and appeal of *this action only* and in accordance with any further order issued by the Court.

Koole Decl., ¶4, Exh. B, TLC Protective Order at ¶ 24 (emphasis added).

Through its prior representation of TLC against VIZIO, Oplus counsel was necessarily aware that the protected information it possessed concerned the same three technologies for which this Court refused to permit discovery in its April 3, 2013 Order. Armed with the knowledge of this protected information, Oplus counsel issued the Subpoena for the following documents:

> All Pleadings files, deposition files and accompanying exhibits retained by Outside Counsel pursuant to the Protective Order from the case styled Technology Licensing Corporation et al., v. Vizio, Inc., et al. (Civ. Action No. 1:08-cv-00393), which identify or relate to the use of *HQV, MDDi or DCDi technologies by Vizio*.

Koole Decl., ¶2, Exh. A, TLC Subopena (emphasis added).

Thus, rather than fix its deficient infringement contentions and obtain documents relevant to this case through proper discovery procedures, Oplus counsel issued a Subpoena that was styled as issued to TLC but which actually sought the confidential VIZIO information in Oplus counsel's *own files*. Thus, Oplus counsel used the knowledge of VIZIO's confidential information obtained from their representation of TLC in the prior action to subpoena documents they were only permitted to retain as a record of that case. By doing so, Oplus counsel planned to circumvent the Court's April 3, 2013 Order and "obtain" confidential VIZIO documents quickly and without objection, as they plainly would not object to or refuse to comply with their own Subpoena to themselves. Because Oplus counsel

necessarily used and relied on VIZIO's protected information from the TLC case in deciding to issue the Subpoena, the *mere issuance* of the Subpoena is a violation of the TLC Protective Order. Koole Decl., ¶4, Exh. B, TLC Protective Order at ¶ 24.

Moreover, if Oplus counsel "produces" any of the subpoenaed documents or attempts to make use of them in this case, Oplus counsel would be in *further* violation of the TLC Protective Order. Oplus counsel's use of the subpoena process does not insulate its improper use of protected information from the TLC case as the TLC Protective Order permits the production of protected information only in response to "a ***lawful subpoena*** or other legal process. . ." Koole Decl,. ¶4, Exh. B, TLC Protective Order at ¶ 32 (emphasis added). In contrast, the Subpoena is *un*lawful.

Unless the Court intervenes to protect VIZIO from the Subpoena, Oplus counsel will be in violation of two court orders, and will be in a position to mislead the Court and jury with irrelevant information about technologies for which Oplus cannot even make a facial showing of relevance to the patents-in-suit. Further, the entire logic and purpose of Court's April 3, 2013 Order denying Oplus' motion to compel will be frustrated — and Oplus will be unfairly rewarded — if it can obtain VIZIO documents by subpoenaing a "third-party" for documents it has been prohibited by this Court from obtaining directly from VIZIO.

## IV. The Subpoena to TLC Seeks Irrelevant Documents in Contravention of the Court's Order Denying Oplus' Motion to Compel

The documents Oplus seeks from the TLC case are entirely irrelevant to this case. Oplus has failed to describe any specific acts taken by VIZIO that constitute direct infringement, and it has not even attempted to show that the products involved in the TLC case were ever sold after December 1, 2011, when VIZIO was first made aware of the patents-in-suit. Thus, it cannot establish a direct or indirect infringement claim based on the products that are the subject of the Subpoena.

First, Oplus has no viable claim against VIZIO for direct infringement because Oplus has not alleged any act by VIZIO of direct infringement that would implicate

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VIZIO'S MOTION FOR PROTECTION FROM UNLAWFUL SUBPOENA AND PROHIBITING USE OF SUBPOENAED DOCUMENTS

805753

these documents.  Oplus alleges that VIZIO has directly infringed the patents-in-suit by "making, using, importing, selling or offering to sell . . . video products using deinterlacing methods" and "video signal error correction methods" that fall within the scope of the patents' claims.  Koole Decl., ¶7, Exh. E, First Amended Complaint at ¶¶ 9 and 11.  However, each of the patent claims asserted by Oplus is a method claim.  Koole Decl., ¶6, Exh. D, Oplus' Infringement Contentions at 2:10-24.  A method claim cannot be directly infringed by making, importing, selling or offering to sell a product that is merely *capable* of practicing a method.  *Joy Techs., Inc. v. Flakt, Inc.,* 6 F.3d 770, 774-75 (Fed. Cir. 1993) ("[A] method claim is not directly infringed by the sale of an apparatus even though it is capable of performing only the patented method. The sale of the apparatus is not a sale of the method. A method claim is directly infringed only by one practicing the patented method."); *see also Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F. 3d 1325, 1335 (Fed. Cir. 2008) ("[A] party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)."), *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1320-21 (Fed. Cir. 2005) ("Thus, the legislative history of section 271(a) indicates Congress's understanding that method claims could only be directly infringed by use"). Thus, VIZIO's sales records are irrelevant.

Moreover, Oplus' infringement contentions do not identify any particular "use" that VIZIO makes of its televisions which would constitute performance of the asserted method claims.  Koole Decl., ¶6, Exh. D, Oplus' Infringement Contentions. Instead, in its letter served on the afternoon of the last day of discovery, Oplus told VIZIO that its direct infringement claims are based not on consumer use of VIZIO televisions, but on *VIZIO* having "used its accused products" by turning on a handful of sample accused televisions.  Koole Decl., ¶5, Exh. C at 2.  However, Oplus has not even attempted to show that this *de minimis* use of the accused televisions performs the methods of the asserted '840 and '842 Patent claims.  Nor could it even allege that they do.

Each of the asserted claims necessarily requires, at a bare minimum, the receipt of an *interlaced signal*, a fact that Oplus admitted in this same letter. Koole Decl., ¶8, Exh. F, '842 Patent at 7:64 and 13:47-48 ("receiving the interlaced video format") and Koole Decl., ¶9, Exh. G, '840 Patent at 25:32-33 ("in a temporal interlaced sequence"); *see also* Koole Decl., ¶5, Exh. C at 7 ("Since progressive video inputs have no fields and interlaced video inputs do have fields, the video signal must be received (i.e. before it can be displayed) and characterized (e.g. so the TV knows if it needs to be deinterlaced)."). Oplus has not alleged in either its infringement contentions or in its May 15 Letter that VIZIO has ever used any accused television set to receive an interlaced signal. Koole Decl., ¶5, Exh. C; Koole Decl., ¶6, Exh. D. Nor has it shown why the *de minimis* use of sample televisions by VIZIO would entitle Oplus to the documents called for by the Subpoena, in particular, sales documents that are wholly irrelevant to infringement claims based on *VIZIO's* use of its televisions. Thus, Oplus cannot claim that the documents improperly sought from its counsel's files are relevant to any alleged direct infringement by VIZIO.

Second, Oplus cannot justify its Subpoena based on a theory of indirect infringement. Oplus has no viable claim for indirect infringement based on products sold prior to the filing of this action because Oplus has not and cannot establish, and indeed has not even alleged, any notice of the asserted patents to VIZIO prior to the filing of this action. Koole Decl., ¶6, Exh. D, Oplus' Infringement Contentions and ¶11, Exh. I, VIZIO's Supplemental Interrogatory Responses. Oplus has not even alleged that any of the products at issue in the TLC case were sold following the filing of this lawsuit, and it could not. *Id.* Both contributory infringement and inducement of infringement require, at a minimum, actual knowledge of the patents that are allegedly infringed. *Synqor, Inc. v. Artesyn Techs., Inc.,* 709 F.3d 1365, 1379 (Fed. Cir. 2013) (citing *Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S. Ct. 2060, 2068, 179 L. Ed. 2d 1167 (2011)) ("Liability for induced or contributory infringement under § 271(b) or (c) requires 'knowledge that the induced acts constitute patent

infringement.' ***This includes, in part, actual 'knowledge of the existence of the patent that is infringed*.'") (emphasis added).  Because VIZIO never had any notice of the asserted patents prior to the filing of the Complaint, Oplus cannot show that the documents sought in the Subpoena could possibly be relevant to a claim of indirect infringement in the current litigation.

## V.     Conclusion

For all the foregoing reasons, VIZIO respectfully requests that this Court grant VIZIO protection from the enforcement of the Subpoena, and enter a protective order prohibiting the use by Oplus of any documents removed from its files pursuant to the Subpoena.

Dated:  May 17, 2013                               Respectfully submitted,

By:  /s/ Adrian M. Pruetz__
Adrian M. Pruetz
Charles C. Koole
GLASER WEIL FINK JACOBS
 HOWARD AVCHEN & SHAPIRO LLP

Enoch H. Liang
Steven R. Hansen
LEE TRAN & LIANG APLC

*Attorneys for Defendant
VIZIO, Inc.*