NIRO, HALLER & NIRO
Raymond P. Niro (*Pro Hac Vice admitted*)
rniro@nshn.com
Daniel R. Ferri (*Pro Hac Vice admitted*)
dferri@nshn.com
Gabriel I. Opatken (*Pro Hac Vice admitted*)
gopatken@nshn.com
181 West Madison, Suite 4600
Chicago, IL 60602-4515
Telephone: (312) 236-0733
Facsimile: (312) 236-3137

KNEAFSEY & FRIEND LLP
Sean M. Kneafsey (SBN 180863)
skneafsey@kneafseyfriend.com
800 Wilshire Blvd. Ste. 710
Los Angeles, California 90017
Telephone: (213) 892-1200
Facsimile: (213) 892-1208

*Attorneys for Plaintiff*
*Oplus Technologies, Ltd.*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| OPLUS TECHNOLOGIES, LTD., <br><br> Plaintiff, <br><br> v. <br><br> SEARS HOLDINGS CORPORATION and VIZIO, INC., <br><br> Defendants. | Case No. CV12-5707 MRP (E) <br><br> *Honorable Mariana R. Pfaelzer* <br><br> **OPLUS' RESPONSE TO VIZIO'S MOTION FOR PROTECTION** |

# TABLE OF CONTENTS

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 1 |
| III. | THIS COURT'S APRIL 3, 2013 ORDER | 4 |
| IV. | OPLUS HAS NOT, AND NEVER INTENDED TO, VIOLATE THIS COURT'S ORDER | 6 |
| V. | THE TLC PROTECTIVE ORDER | 8 |
| VI. | OPLUS' SUBPOENA PROPERLY SEEKS RELEVANT EVIDENCE | 11 |
| VII. | CONCLUSION | 14 |

# TABLE OF AUTORITIES

**Page(s)**

**CASES**

*Bender v. Maxim Integrated Prods., Inc.*,
  2010 WL 1135762 (N.D. Cal. Mar. 22, 2010) ...........................................................4

*DDR Holdings, LLC v. Hotels.com*,
  2012 WL 2935172, No. 2:06-cv-42-JRG (E.D. Tex. July 18, 2012)............1, 2, 4, 5

*IP Innovation LLC et al. v. Mitsubishi Elec. Corp. et al.*,
  No. 1:08-cv-00393 (N.D. Ill.) .................................................................................9, 10

**OTHER AUTHORITIES**

C.J. Randall R. Rader, *The State of Patent Litigation*, 21 Fed. Circuit B.J.
  331, 335 (2011-12) ..................................................................................................13

## I. INTRODUCTION

Following the deposition of VIZIO employee Ken Lowe, counsel for VIZIO requested a word with Oplus' counsel and candidly told him that, unless Oplus withdrew its subpoena to TLC, VIZIO would file a motion to "embarrass" Oplus' counsel. (Ferri Decl., ¶ 2). This provides an insightful view of the apparent "real" purpose for VIZIO's motion. The motion does not address any prejudice or harm to VIZIO arising from the Oplus subpoena to TLC. The documents sought involve technical details of the same technology and the same television models at issue in this case. Thus, there is no question of relevance or burden to VIZIO or its counsel. Moreover, the documents are known to exist from the public record.

Neither Oplus nor its counsel has used any VIZIO confidential information from the TLC action in this case. And if they had (which is not the case), VIZIO was required to seek relief in the Northern District of Illinois, not before this Court.

## II. BACKGROUND

VIZIO asserts that "the purpose of infringement contentions is to provide structure to the entire discovery process by requiring a patentee to crystallize its infringement theory, and avoid discovery excesses by tailoring discovery to the appropriate scope of the case." (VIZIO Br. at 4). That makes sense, but the Court's April 3, 2013 Order also held that "[I]nfringement contentions are not intended to impose rigid boundaries that confine the scope of discovery." (Dkt. 121 at 1; citing *DDR Holdings, LLC v. Hotels.com*, 2012 WL 2935172, *3, No. 2:06-cv-42-JRG (E.D. Tex. July 18, 2012)).

As the *DDR Holdings* case recognized, "[i]nfringement contentions serve the important role of **providing Defendants notice** of the theories of infringement in a case. However, **infringement contentions are not intended to impose rigid boundaries that confine the scope of discovery** to only those products that are specifically identified therein." *Id.* (emphasis added). VIZIO was placed on adequate notice of Oplus' theories of infringement on August 9, 2012 when Oplus provided *specific* notice of fourteen different VIZIO products that infringed the patents-in-suit.

Here, Oplus provided detailed infringement contentions totaling 68 pages on August 9, 2012 (the best it could do from publicly available information), identifying the following infringing products: "Televisions and/or displays incorporating Silicon Optix HQV technology, including but not limited to, *VP505XVT, VP504F, VP605F* model televisions;" "Televisions and/or displays incorporating Faroudja DCDi technology, including, but not limited to, *P50HDTV10A, VM60P, GV46L0, RP56, L13* and *JV50P* model televisions;" and "Televisions and/or displays incorporating MediaTek motion adaptive deinterlacing technology (e.g., MediaTek MT535C, MT538X and MT820X video signal processing chops with MDDi), including, but not limited to, *L42HDTV10A, GV42L HDTV, L37HDTV, VW46L FHDTV10A,* and *P42HDTV10A* model televisions." (See Ferri Decl., ¶ 3; Ex. 1, p. 2 (emphasis added)).

Oplus has had absolutely no discovery from VIZIO (save the prior art that VIZIO produced), despite its attempt to compel minimal discovery from VIZIO about the design, operation and sales of the 14 identified VIZIO products.

VIZIO says that "Oplus declined the opportunity provided by the Court to properly obtain discovery," (VIZIO Br. at 4), claiming "Oplus made a desperate attempt to demonstrate facial compliance with the Court's Order by serving VIZIO with a 14 page letter that cosmetically purports, but utterly fails, to address the numerous deficiencies in Oplus' infringement contentions." (Id. at 4-5). Not so. Per the Court's "blueprint" guidance, Oplus parsed out 31 different questions posited by VIZIO (which would have been more properly and formally propounded as contention interrogatories or deposition topics for an expert on the issue of infringement), then proceeded to provide detailed responses. (Ferri Decl., ¶ 4; Ex. 2). Yet, even this, is apparently still not good enough. Can Oplus ever provide a response that fully satisfies VIZIO? And does VIZIO have the right to unilaterally decide the sufficiency of Oplus' infringement contentions?

VIZIO did not move the Court for a more definite statement of infringement contentions or for a protective order from properly served discovery. Rather, VIZIO has simply refused all discovery based on a letter it sent demanding the equivalent of informal contention interrogatory responses.

After Oplus served its infringement contentions on August 9, 2012, the Court denied summary judgment and construed the disputed claims terms. Nonetheless, VIZIO withheld all discovery based on a letter sent to Oplus on September 26, 2012. After the Court's Order denying Oplus' Motion to Compel (discussed more fully below), Oplus responded to VIZIO's September 26, 2012 letter, addressing each of the perceived deficiencies. VIZIO should not be permitted to unilaterally dictate the scope of allowable discovery by claiming

ignorance of Oplus' infringement contentions or by demanding contention interrogatory responses via letter.

### III. THIS COURT'S APRIL 3, 2013 ORDER

On April 3, 2013, this Court issued its Order Re ECF Nos. 114, 115 denying Oplus' Motion to Compel discovery and citing the *DDR Holdings* decision: (1) that "[I]nfringement contentions are not intended to impose rigid boundaries that confine the scope of discovery...." (Dkt. No. 121, p. 1; citing *DDR Holdings*, 2012 WL 2935172, at *3) and (2) "'Adequate' contentions are not intended to limit discovery, only to provide structure to it." (Id.). The Court also relied on *Bender v. Maxim Integrated Prods., Inc.*, 2010 WL 1135762 (N.D. Cal. Mar. 22, 2010) for the proposition that "where contentions are inadequate, courts have not only limited discovery, they have stayed it entirely." (Dkt. No. 121 at p. 1).

In *DDR Holdings*, the Texas court decided a ***plaintiff's motion to compel*** – a situation identical to that presented here. *DDR Holdings*, No. 2:06-cv-42-JRG, at *1, ordering the defendant to produce a knowledgeable witness pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. *Id.* The opinion discussed the applicable legal standard in the Eastern District of Texas:

> The rules of discovery are accorded a broad and liberal treatment to affect their purpose of adequately informing litigants in civil trials. It is well settled in the Eastern District [of Texas] that "there is no brightline rule that discovery is permanently limited to the products specifically accused in a party's [infringement contentions]." Such a limitation would be "inconsistent with the broad discovery regime created by the Federal Rules and the notion that a party may be able to amend its [infringement contentions]." Therefore, discovery may properly be extended to "products 'reasonably similar' to those accused in [infringement contentions]."

*Id.* at *2 (internal citations omitted). It also held that a party cannot unilaterally refuse all discovery, like VIZIO has in this case:

> [The defendant] Digital River may not ignore a 30(b)(6) deposition notice simply because **it believes** the topics noted therein are outside the proper scope of discovery. **Procedural devices, including a motion for protective order, are available and known** to Digital River to protect itself from potential discovery that may be outside the scope of this case. Digital River's **unilateral decision to block discovery** into a topic clearly and unambiguously identified in a 30(b)(6) deposition notice **is not permitted under the Federal Rules of Civil Procedure** or this Court's Local Rules; in fact, such unilateral action blatantly usurps the Court's function as the gatekeeper in matters of discovery.

*Id.* (emphasis added).

Like the *DDR Holdings* case, the issue here is whether a defendant accused of infringement (with 14 specific products identified as infringing) can unilaterally decide that infringement contentions are not good enough and refuse all discovery.

As the court held in *DDR Holdings*:

> Infringement contentions serve the important role of **providing Defendants notice** of the theories of infringement in a case. However, **infringement contentions are not intended to impose rigid boundaries that confine the scope of discovery** to only those products that are specifically identified therein.

*Id.* at *3 (emphasis added).

Oplus' infringement contentions provided VIZIO with notice of its theories of infringement – at the beginning of this case and before any discovery of information not otherwise publicly available. Oplus' infringement contentions also identified 14 specific VIZIO products accused of infringement and placed VIZIO on notice that other similar products also infringed. Oplus also identified three specific technologies that facilitate the method claimed in the patents-in-suit. If

VIZIO legitimately believed that these infringement contentions were deficient, it should have moved the Court to compel Oplus for a more definite statement of its infringement contentions. Alternatively, rather than unilaterally refusing all discovery, VIZIO should have moved the Court for an order for protection. It did neither.

On April 10, 2013, shortly after entry of the Parties' Stipulated Protective Order, Oplus produced 3,215 pages of documents and hoped (based on VIZIO's prior representations) that VIZIO would do the same. VIZIO produced no documents – despite demanding several changes and provisions to the proposed Protective Order during negotiations that most recently spanned the period from February 26, 2013 to April 3, 2013.

VIZIO then made clear that it read this Court's April 3, 2013 Order as foreclosing *all* discovery, regardless of type and regardless of VIZIO's previous representations. If VIZIO has properly interpreted this Court's Order, then its issuance was certainly unexpected by Oplus and, therefore, has had sweeping unintended and unforeseen consequences – the epitome of "rogue."

### IV. OPLUS HAS NOT, AND NEVER INTENDED TO, VIOLATE THIS COURT'S ORDER

VIZIO claims Oplus' counsel announced its intent to ignore the Court's April 3, 2013 Order by calling it a "rogue order" – unexpected with unforeseen consequences – and that Oplus subsequently issued a subpoena seeking discovery from TLC. (VIZIO Br. at 4). There is no relationship between the Order and the subpoena except that VIZIO contends that this Court's Order bars *all* discovery.

On or about April 19, 2013, counsel for Oplus participated in a telephonic meet and confer with counsel for VIZIO. (Opatken Decl., ¶ 2). The purpose of the call was to discuss VIZIO's continued refusal to produce documents (numerous of which had been identified by VIZIO as withheld until the entry of a Protective Order). (Id.). On April 5, 2013, the Protective Order was entered. (Id.). While VIZIO had previously said that the entry of a Protective Order was the only remaining barrier to production of documents responsive to numerous requests, VIZIO's counsel stated during the call that it was relying upon this Court's April 3, 2013 Order as justification for its refusal to provide *any* discovery. (Id. at ¶ 3).

VIZIO remained adamant that it would not produce documents, even those unrelated to infringement and, thus, not framed solely by Oplus' infringement contentions. (Id. at ¶ 10). By way of example, VIZIO refused to produce documents relating to RPD No. 11 ("Documents sufficient to show the date Defendant first learned of the existence of Oplus"), RPD No. 43 ("All validity or patentability prior art search or investigation reports relied upon, reviewed, generated, performed, commissioned, ordered, requested, received, contracted or purchased by or for Defendant in reference to the patents-in-suit"), RPD No. 47 ("All documents and things that relate to correspondence and/or communication among and between the Defendant and any third party, including, but not limited to Sears Holding Corporation, JVC Americas Corporation, Faroudja Labs, STMicroelectronics, Genesys Microchip, Silicon Optix, IDT, Teranex, Jupiter Systems, GEO Semiconductor, MediaTek, AmTran Technology and VIZIO, Inc., mentioning or referring to Oplus, this lawsuit, or the patents-in-suit"), and RPD

No. 52 ("All documents and things that relate to any of Defendant's document retention and/or destruction policies and/or practices from 2006 to the present"). (Id. at ¶ 12). In short, VIZIO has imposed a stay of all discovery from it.

## V.   THE TLC PROTECTIVE ORDER

VIZIO contends that "[u]nder the terms of the TLC Protective Order, VIZIO is required to seek 'judicial protection from the enforcement of the subpoena' and/or 'entry of an appropriate protective order' from *this Court* within fourteen calendar days of notice of the subpoena from TLC counsel." (VIZIO Br. at 4 (emphasis added)). Not so.

Paragraph 27(c) of the Protective Order states that the United States District Court for the Northern District of Illinois, not this Court, retains jurisdiction over disputes arising under the TLC Protective Order:

> For the purposes of enforcing this Protective Order and resolving any disputes thereunder, **the Court retains jurisdiction indefinitely** over the parties and any persons provided access to CONFIDENTIAL, ATTORNEYS' EYES ONLY, and CONFIDENTIAL SOURCE CODE – ATTORNEYS' EYES ONLY information under the terms of this Protective Order.

(Koole Decl. Ex. B, ¶ 27(c) (emphasis added)).

Likewise, VIZIO omits reference to Paragraph 33, which states:

> All persons bound by this Protective Order are hereby notified that **if this Protective Order is in any manner violated, the person or entity who commits such violation shall be subject to such sanctions as the Court on motion and after a hearing deems just.**

(Id. at ¶ 33 (emphasis added)).

If VIZIO sincerely believed (as it now represents) that Oplus has violated or is in imminent risk of violating the TLC Protective Order, then why would VIZIO bring its motion in this Court? VIZIO claims that "**Through its prior representation of TLC against VIZIO**, Oplus counsel was necessarily aware that the protected information it possessed concerned the same three technologies" at dispute in this case, (VIZIO Br. at 6 (emphasis added)); that "Oplus counsel used the knowledge of VIZIO's confidential information **obtained from their prior representation of TLC** in the prior action to subpoena documents," (Id. (emphasis added)); and, that "**Oplus counsel necessarily used and relied on VIZIO's protected information from the TLC case** in deciding to issue the Subpoena," (Id. at 6-7 (emphasis added)). The TLC litigation was not conducted in total secrecy – the public record identifies the parties and the issues – and one need not have access to confidential documents to realize that VIZIO produced documents to TLC that relate to the same products and same technology at issue in this case.

Plaintiffs' Memorandum in Support of its Motion to Compel Defendant VIZIO to Supplement its Responses to Plaintiffs' Interrogatories is a ***public filing*** from *IP Innovation LLC et al. v. Mitsubishi Elec. Corp. et al.*, No. 1:08-cv-00393 (N.D. Ill.), wherein the plaintiff sought, publicly, to compel production of the following:

> Interrogatory No. 8: Identify by model number all products sold by **Vizio** since 2003 which includes resolution enhancement technology, a controller chip which performs resolution enhancement, smoothing or interpolation, including, without limitation, devices using **HQV or DCDi technologies** or any variants thereof, and further including those products set forth herein as Relevant Products.

(Ferri Decl., ¶ 5; Ex. 3, p. 4 (emphasis added)).

Similarly, Plaintiff's Supplemental Responses to Defendant VIZIO's First Set of Interrogatories (Nos. 2, 3, and 4) is a ***public filing attached by VIZIO*** to its Motion to Compel Supplemental Responses to Interrogatory No. 4 in *IP Innovation*, No. 1:08-cv-00393. That document includes the following:

> Vizio also sells televisions with **HQV technology** to provide an image with increased resolution. Visio's [*sic*] **VP505XVT**, **VP504F**, and **VP605** all have **HQV processing** built into the television panels. **HQV processing** is a video chip that delivers excellent video quality for scaling lower-resolution sources to the native (i.e. increased) resolution of the panel. See "Vizio Unveils Plasmas With Built-In **HQV**," January 6, 2008: http://ces.cnet.com/8301-13855_1-9841385.html....

(Ferri Decl., ¶ 6; Ex. 4, p. 9 (emphasis added)).

Likewise, VIZIO's Memorandum in Support of Motion for Summary Judgment of Non-Infringement (#3) of United States Patent Nos. 6,870,964 and 7,382,929 is a ***public filing by VIZIO*** in *IP Innovation*, No. 1:08-cv-00393 that states:

> In this case, Plaintiff's Infringement Contentions assert that VIZIO products infringe the two Patents-in-Suit simply by incorporating any one of three motion-adaptive "deinterlacing" technologies: **MDDi** (MediaTek chips); **HQV** (Teranex Reon chips); or **DCDI** (Genesis chips).

(Ferri Decl., ¶ 7; Ex. 5, p. 18 (emphasis added)). VIZIO states in that same filing, contrary to VIZIO's numerous assertions in this case, that "[d]uring discovery in this action, in good faith, VIZIO identified (by make and model) the third party chips used in its products." (Id. at p. 15).

The TLC Protective Order does not bar the use of publicly filed information; indeed, paragraphs 23 and 24 of the TLC Protective Order make clear that such a position would be untenable:

> 23. **The restrictions set forth in this Order will not apply to information** which is known to the receiving party or the public before the date of its transmission to the receiving party, or **which becomes known to the public after the date of its transmission** to the receiving party, provided that such information does not become publicly known by any act or omission of the receiving party, its employees, or agents which would be in violation of this order.
>
> * * * *
>
> 24. No person or party shall directly or indirectly utilize or disclose any CONFIDENTIAL, ATTORNEYS' EYES ONLY, or CONFIDENTIAL SOURCE CODE – ATTORNEYS' EYES ONLY information obtained pursuant to pretrial discovery in this action, except for the purposes of preparation, trial, and appeal of this action only and in accordance with any further order issued by the Court. **Nothing herein shall prevent or in any way limit disclosure, use, or dissemination of any documents, things, or information that are in the public domain.**

(Koole Decl. Ex. B, pp. 18-19 (emphasis added)).

In short, there has been no violation or imminent violation of the TLC Protective Order. And if there were (which is not the case), VIZIO should have sought relief in the Northern District of Illinois, not before this Court.

## VI.  OPLUS' SUBPOENA PROPERLY SEEKS RELEVANT EVIDENCE

VIZIO has never moved this Court for an order foreclosing or staying all discovery by Oplus. And, the Court's April 3, 2013 Order denying Oplus' Motion to Compel did not foreclose all discovery by Oplus in this litigation.

In support of its position that Oplus seeks irrelevant information via subpoena, VIZIO argues that "Oplus has no viable claim against VIZIO for direct

infringement because Oplus has not alleged any act by VIZIO of direct infringement." (VIZIO Br. at 7-8). But this ignores Oplus' specific allegations that:

> Vizio has used its accused products as testified by its corporate designees (see, e.g., the deposition of Mr. Lowe). See Also publicly available examples of Vizio's use of the accused televisions through displays provided at its suite at CES and other shows (see, e.g., http://cnettv.cnet.com/vizio-vp504f/9742-1_53-31953.html; see also http://www.businesswire.com/news/home/20080107005370/en/Eleven-Products-CES-2008-Feature-Silicon-Optix).

(Ferri Decl., ¶ 4; Ex. 2, p. 2).

VIZIO's refusal to produce any documents is simply an effort to shield evidence of direct infringement. VIZIO cannot square its flat out denials of *any* use to this Court with evidence that is directly to the contrary.

VIZIO further argues that "Oplus has no viable claim for indirect infringement based on products sold prior to the filing of this action because Oplus has not and cannot establish, and indeed has not even alleged, any notice of the asserted patents to VIZIO prior to the filing of this action." (VIZIO Br. at 9). But VIZIO has refused to produce documents that would confirm or deny VIZIO's conclusory assertion. Likewise, VIZIO has refused to produce any documents that would establish that none of the fourteen specifically identified VIZIO products were sold after the filing of this lawsuit. Oplus is not seeking VIZIO's "secret sauce" – in fact, VIZIO's previous representations to the Court indicate that it has no "secret sauce" to disclose. Oplus is seeking information about sales, notice of the patents-in-suit, and VIZIO's use of specific products – information both focused and relevant to the issues in the case.

As the Court recognized in its April 3, 2013 Order, a court should strive to "tailor its timing and procedures to make sure a billion-dollar case gets a 'billion-dollar' process and a thousand-dollar case gets its due as well." (Dkt. 121 at 2; quoting C.J. Randall R. Rader, *The State of Patent Litigation*, 21 Fed. Circuit B.J. 331, 335 (2011-12)). VIZIO's refusal to produce discovery has thwarted the parties' – and the Court's – ability to efficiently ascertain the value of this case. VIZIO simply asserts, without any documentary support, that this is a zero-dollar case. Every defendant could say that. Yet, VIZIO's own admissions during deposition – Oplus' only opportunity for any discovery in this case – demonstrate that VIZIO is liable for direct infringement through at least its own use of the accused products. Thus, this case is not a zero-dollar case: perhaps not a billion-dollar case but, because of VIZIO's refusal to produce *any* meaningful discovery, the parties are left to guess. And worse, assuming that this is not a billion-dollar case, VIZIO has exacerbated the costs of this litigation (presumably well aware of its own sales data and potential liability for direct infringement) by treating this action as though it is a billion-dollar case.

If, as VIZIO contends, this case is premised on "*de minimis* use" of its own products and no notice prior to filing of the suit (coupled with the lack of sales after filing of the suit), then why did VIZIO move to transfer the case, move for summary judgment, and demand early claim construction? Wouldn't a prudent defendant with such a "hot hand" show at least some of those cards to encourage early and frank discussions of settlement or voluntary dismissal? Instead, the

parties have expended significant resources with nothing to show for their efforts save a denied motion for summary judgment and construed claims.

Simply put, the current subpoena efficiently seeks relevant information from another similar case that VIZIO, itself, should have provided as a party to this case. That information, whether obtained directly from VIZIO or indirectly via subpoena for VIZIO's own documents served upon a third party, will enable the parties to more quickly assess the merits of this case and make an informed decision about how to best proceed in the manner that is most efficient for the parties and the Court.

## VII. CONCLUSION

Based on the foregoing, VIZIO's Motion for Protection from Subpoena Issued in Violation of Multiple Court Orders and Prohibiting Use of Subpoenaed Documents should be denied.

Respectfully submitted,

*/s/ Gabriel I. Opatken*
Raymond P. Niro (Pro Hac Vice)
Daniel R. Ferri (Pro Hac Vice)
Gabriel I. Opatken (Pro Hac Vice)
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, IL 60602
Telephone: (312) 236-0733
Facsimile: (312) 236-3137
Email: rniro@nshn.com
Email: dferri@nshn.com
Email: gopatken@nshn.com

Sean M. Kneafsey (SBN 180863)
KNEAFSEY & FRIEND LLP
800 Wilshire Blvd. Ste. 710
Los Angeles, California 90017
Telephone: (213) 892-1200
Facsimile: (213) 892-1208
Email: skneafsey@kneafseyfriend.com

**Attorneys for Oplus Technologies, Ltd.**

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 24, 2013 the foregoing **OPLUS' RESPONSE TO VIZIO'S MOTION FOR PROTECTION** was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record:

Enoch H. Liang
ehl@ltlattorneys.com
Steven R. Hansen
srh@ltlattorneys.com
LEE TRAN & LIANG APLC
601 S. Figueroa Street, Suite 4025
Los Angeles, CA 90017
Telephone: (213) 612-3737
Facsimile: (213) 612-3773

Adrian M. Pruetz
apruetz@glaserweil.com
Charles C. Koole
ckoole@glaserweil.com
GLASER WEIL FINK JACOBS HOWARD AVCHEN & SHAPIRO LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Telephone: (310) 282-6206
Facsimile: (310) 785-3506

*Attorneys for VIZIO, Inc.*

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

*/s/ Gabriel I. Opatken*
*Attorneys for Oplus Technologies, Ltd.*