1

2                                                               Link: 190

3

4

5

6

7                    **UNITED STATES DISTRICT COURT**

8                    **CENTRAL DISTRICT OF CALIFORNIA**

9                         **WESTERN DIVISION**

10

11   OPLUS TECHNOLOGIES, LTD.,          Case No. 2:12-cv-05707-MRP-Ex

12            Plaintiff,                 **ORDER DENYING DEFENDANT**
                                         **VIZIO, INC.'S MOTION FOR**
13        v.                             **ATTORNEYS' FEES AND**
                                         **EXPERT WITNESS FEES**
14   SEARS HOLDINGS

15   CORPORATION; VIZIO, INC.;

16            Defendant(s).

17

18

19                    **I.    INTRODUCTION**

20       Plaintiff Oplus Technologies, Ltd. ("Oplus") has sued Defendant Vizio, Inc.

21   ("Vizio") for infringement of two video signal processing patents: U.S. Patent No.

22   6,239,842 ("the '842 Patent") and U.S. Patent No. 7,271,840 ("the '840 Patent").

23   On a full record after the close of discovery, the Court granted Vizio's motion for

24   summary judgment of both noninfringement of the asserted claims of the '842 and

25   '840 Patents and anticipation as to the asserted claims of the '842 Patent.  The

26   Clerk entered judgment in favor of Vizio.  Vizio now moves for attorney fees and

27   expert witness fees pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's

28   inherent power.

1

## II.    BACKGROUND AND PROCEDURAL HISTORY

2      The Court finds the following facts to be supported by clear and convincing

3    evidence.

4      The history of this case does not begin with the filing of the complaint.  Instead,

5    it begins with a prior lawsuit, *IP Innovation LLC v. Vizio*.  Civ. No. 1:08-cv-393

6    (N.D. Ill. July 1, 2010) ("IP Innovation Case").  In the IP Innovation Case, the law

7    firm Niro, Haller & Niro represented IP Innovation LLC and Technology

8    Licensing Corporation ("TLC") in a patent infringement action against several

9    defendants, including Vizio, Inc.  Six lawyers from Niro, Haller & Niro appeared

10   on behalf of IP Innovation, including Raymond Niro, Arthur Gasey, and Paul

11   Gibbons.  The patents at issue claimed apparatuses and methods for processing

12   video signals to enhance television resolution.

13     On December 1, 2011, Oplus, represented by Niro, Haller & Niro, filed its

14   original complaint in this lawsuit against Vizio and Sears Holding Corporation

15   ("Sears") in the Northern District of Illinois alleging infringement of the '842 and

16   '840 Patents.  Doc. No. 1.  Like the patents at issue in the IP Innovation Case, the

17   '842 and '840 Patents relate to video signal processing, as described in the Court's

18   order on noninfringement and invalidity.  *See* Doc. No. 183.  The asserted claims

19   of the '842 and '840 Patents are directed to methods for receiving pixel data from a

20   video input signal, applying an algorithm to the pixel data, and using the results of

21   the algorithm to determine values for the pixel data in the output signal.  The

22   algorithm of the '842 Patent converts an interlaced video signal into a deinterlaced

23   signal for display on progressive scan displays.  The algorithm of the '840 Patent

24   corrects error in a real time streaming digital video image by analyzing pixel

25   entropy.

26     Mr. Niro, Mr. Gasey, Mr. Gibbons, and Gabriel Opatken appeared  on the

27   record on behalf of Oplus, but Mr. Opatken was most often before the Court.  The

28   original complaint alleged that Vizio infringed the methods of the '842 and '840

1  Patents by using and contributing to others' use of the allegedly infringing

2  television sets.  *Id.* at ¶ 9–11.  The original complaint further alleged that Sears, as

3  a reseller of Vizio television sets and "other products," also infringed by use of the

4  same.  *Id.* at 10.  Oplus provided one example of an allegedly infringing product

5  sold by Sears that was not manufactured by Vizio.  *Id.*  On December 20, 2011,

6  Oplus filed a corrected amended complaint.  Doc. No. 14.  The First Amended

7  Complaint omitted allegations that Sears had used the allegedly infringing products

8  and added allegations of indirect infringement against Vizio.  *Id.* at 9–12.

9  **A.      Transfer Motion to the Central District of California**

10      Sears asked Oplus for its consent to an extension of time both to answer the

11  complaint and to hold the initial status conference, and Oplus agreed to the

12  extensions.  Doc. No. 27.  When Sears moved the Court only for an extension of

13  time to answer the complaint, Oplus took issue with Sears's decision not to

14  postpone the status conference.  *See* Doc. Nos. 23, 27.  Oplus moved the Court for

15  an extension of time to hold the initial status conference, unilaterally filing the

16  joint status report of both parties without the signatures of the other parties and

17  scheduling the hearing on its motion after the date of the initial status conference.

18  Doc. No. 27.  Vizio did not oppose the motion, and the Court granted the extension

19  of time.  Doc. Nos. 29–30.

20      Following the initial status conference, Vizio moved to sever the cases against

21  Vizio and Sears and transfer the case against Vizio to the Central District of

22  California.  Doc. No. 37.  Oplus had filed several suits in the Northern District of

23  Illinois, all against a single distributor of video-related products, and had named

24  Sears as a defendant in each lawsuit, presumably in order to keep the suits in the

25  same location.  Vizio listed several companies headquartered in California that

26  sold allegedly infringing chipsets to Vizio.  Oplus, rather than rebut Vizio's

27  arguments, argued that, based on information from the IP Innovation Case, Vizio

28  had "no knowledge or involvement in design and manufacturing" and that all the

1    infringing circuitry was provided by suppliers in China and Taiwan.  Doc. No. 41

2    at 3, 5.  The Court granted Vizio's motion, noting that "[w]hen a plaintiff chooses

3    only one reseller of the accused product out of many, the 'inference [] is irresistible

4    that the principal reason [the customer defendant] has been sued is to establish

5    venue in the Northern District of Illinois.'"  Doc. No. 44 (quoting *Ambrose v.*

6    *Steelcase, Inc.*, Case No. 02-c-2753, 2002 WL 1447871, at *7 (N.D. Ill. July 3,

7    2002).

8         Following the order granting the motion to transfer, Oplus petitioned the United

9    States Judicial Panel on Multidistrict Litigation for centralization of the transferred

10   case with the cases against Sears that remained in the Northern District of Illinois.

11   The panel denied the transfer.  *In re Oplus Techs., Ltd., Patent Litig.*, 899 F. Supp.

12   2d 1373 (M.D.L. 2012).

13   **B.      Infringement Contentions and Discovery**

14        On July 24, 2012, the Court held a scheduling conference for the newly

15   transferred case.  The hearing addressed the schedule for claim construction and

16   discovery.  In addition, the Court told Oplus to "come forward right away with

17   infringement contentions," noting that because the Court had not "seen any

18   infringement contentions," the Court had been left "in limbo" on scheduling.  Doc.

19   No. 84, 12:15–16, 18:16–17.  Addressing Mr. Opatken's concerns about discovery,

20   the Court specified, "You are going to file infringement contentions . . . . [T]he

21   initial [contentions] will give you the right to inquire about those contentions."  *Id.*

22   at 27:17–22.  After the parties filed a supplemental schedule, the Court ordered the

23   entry of the stipulated schedule, which set the deadline for initial infringement

24   contentions for August 9, 2012.  *See* Doc. Nos. 82, 86.

25        On March 20, 2013, the parties submitted a joint statement indicating that

26   serious problems had arisen during the course of discovery.  Doc. No. 114.  In the

27   Joint Stipulation Re: Oplus' Motion to Compel Production of Documents, Oplus

28   asked the Court to compel Vizio to respond to interrogatories and requests for

1   production.  *Id*.  Vizio submitted letter correspondence indicating that it had found

2   Oplus's infringement contentions "ambiguous," "inconsistent," and "deficient,"

3   leaving Vizio unable to "ascertain the true scope" of the infringement contentions

4   and thereby the discovery requests directed to evidence of infringement.  *Id*., Ex. 2

5   ("Oplus is not entitled to any discovery of Vizio's products until it fulfills its

6   obligations to provide claim charts that clearly identify the allegedly infringing

7   technologies and apply the claims as written.") (emphasis omitted).  The Court

8   denied Oplus's motion to compel, noting that "where contentions are inadequate,

9   courts have not only limited discovery, they have denied it entirely."  In the

10  "morass of unstructured discovery caused by these inadequate infringement

11  contentions," the Court could not justify allowing such discovery.

12       Rather than amend its infringement contentions,[1] however, Oplus subpoenaed a

13  plaintiff from the IP Innovation Case for all pleadings and deposition files,

14  including accompanying exhibits, "retained by Outside Counsel pursuant to the

15  Protective Order" issued in the IP Innovation Case.  *See* Doc. No. 126, Ex. 5.

16  According to Oplus, Oplus sought "information about sales, notice of the patents-

17  in-suit, and VIZIO's use of specific products," information that Oplus said it was

18  entitled to regardless of the state of its infringement contentions because such

19  information was "unrelated to infringement."  *See* Doc. No. 127 at 7, 12.  Oplus

20  protested that if the Court's order prevented Oplus from obtaining this information,

21  the order was "the epitome of 'rogue.'"  *Id*. at 6.

22       At the hearing for the protective order, Vizio aptly summarized Oplus's move:

23  "Oplus essentially ignored the April 3rd order and subpoenaed itself for files it had

24  in its possession as a result of a retention clause in a previous case" and, in doing

25  so, violated the order protecting discovery in the IP Innovation Case.  Transcript of

26

27  [1] Prior to the Court's order on the motion to compel, Oplus sent a letter to opposing counsel answering several questions regarding its infringement contentions.  See Doc. No. 126, Ex. C.  Oplus states that it believed the letter

28  met the requirements of the Court's subsequent order and made no changes to its infringement contentions after the order issued.

1   June 7, 2103 Hearing, 4:7–10 ("June 7, 2013 Hearing").  Oplus countered that it

2   had only used publically available information on PACER to tailor its subpoena,

3   *id*. at 4:13–18, 9:6–8, which contained only one broad request.  *See also id*. at

4   44:24–45:1 ("To be clear, no documents of Vizio from the [IP Innovation Case]

5   have been viewed by any counsel for Oplus.").  Oplus simultaneously told the

6   Court that the subpoena had been narrowly tailored and only sought a "narrow

7   subset" of the IP Innovation Case discovery.  "[T]he materials in the [IP

8   Innovation Case] were vetted and broken down from a larger universe of materials

9   . . . .  We're specifically seeking only a subset of those materials."  *Id*. at 11:15–20.

10      While Oplus was preoccupied with telling the Court that all it wanted was to

11   find out whether this is "a billion [dollar] case, or is this a thousand dollar case,"

12   Oplus neglected to pursue third-party discovery to support its initial claim of

13   infringement.  June 7, 2103 Hearing, 38:16–19.  Oplus declined to accept a

14   confidentiality agreement in order to allow their expert access to the source code

15   for an allegedly infringing MediaTek chipset.  Declaration of Charles C. Koole,

16   Doc. No. 196, Ex. Z.  Oplus sought no information from the third party

17   manufacturers of the other two accused chipsets.  Instead, in the face of Vizio's

18   denial and Oplus's own argument before the MDL panel, Oplus continued to insist

19   that Vizio must have evidence of its alleged infringement in its possession.

20   **C.      Validity and Noninfringement Motions**

21      Prior to the claim construction hearing, Vizio moved for summary judgment as

22   to invalidity under 35 U.S.C. §§ 101, 112.  In opposing Vizio's early motion,

23   Oplus offered expert testimony stating that "[a]n absolute value of a linear

24   combination is a linear combination" and could be properly viewed as "a linear

25   combination followed by an absolute value operator."  Declaration of Kara L.

26   Szpondowski in Support of Plaintiff's Response to Defendant's Motion for

27   Summary Judgment, Ex. 10, Doc. No. 108.  The Court issued its claim

28   construction order and denied Vizio's early summary judgment and held that the

1   '842 and '840 Patents claiming patent eligible subject matter and were not

2   indefinite.  Claim Construction Order, Doc. No. 104; Order Denying Vizio's

3   Motion for Summary Judgment, Doc. No. 113.

4       After the Claim Construction Order issued and discovery closed, Vizio again

5   moved for summary judgment.  In two separate motions, Vizio moved the Court to

6   find that the asserted claims of the '842 Patent were anticipated, the asserted

7   claims of the '840 Patent were invalid for lack of written description and

8   enablement, and Oplus had failed to show infringement of both the '842 and '840

9   Patents.  Doc. Nos. 148, 150.

10      Oplus responded to the invalidity motion by parsing out the algorithms

11  presented in the allegedly anticipating references and explaining how the

12  algorithms did not meet the requirements of the asserted claims.  Doc. No. 159 at

13  6–12.  In doing so, Oplus relied on expert testimony from J. Carl Cooper.  Certain

14  portions of Mr. Cooper's testimony, however, contradicted expert testimony from

15  Richard Ferraro provided by Oplus in opposition to Vizio's first summary

16  judgment motion.  *See* Vizio's Reply in Support of Its Motion for Summary

17  Judgment of Invalidity, Doc. No. 167 at 3–6.  Where Mr. Ferraro had stated "An

18  absolute value of a linear combination is a linear combination,"[2] Mr. Cooper

19  opined that a reference that disclosed an absolute value of the linear combination

20  of two spatial pixels was no longer a linear combination and therefore did not

21  anticipate the asserted claim.  Expert Report of J. Carl Cooper, Doc. No. 159, Ex. 5

22  at ¶ 89.

23      Oplus responded to the noninfringement motion by setting forth the bare bones

24  evidence it had relied on early in its case, including product manuals indicating the

25  chipset used in Vizio's television.  Although Oplus had admitted numerous times

26  during the case that other methods and algorithms could perform deinterlacing and

27  _____

28  [2] Oplus argued that "no such phrase is found in Mr. Ferraro's declaration at th[e] paragraph" cited by Vizio.
    Response to Vizio's Motion for Summary Judgment of Noninfringement, Doc. No. 159 at 12.  Rather, the statement
    appeared in the heading above the paragraph cited by Vizio.

1  error correction, Oplus argued that the existence of an interlaced signal input and

2  film-source detection capabilities in Vizio's televisions necessarily showed

3  infringement of the asserted claims.  *See* Response to Vizio's Motion for Summary

4  Judgment of Noninfringement, Doc. No. 171 at 6–11 ("Opposition to

5  Noninfringement MSJ").  Vizio pointed out that Oplus had the burden of

6  presenting material facts sufficient to show an underlying act of infringement.  *See*

7  Vizio's Memorandum of Points and Authorities in Support of Its Motion for

8  Summary Judgment of Noninfringement, Doc. No. 148 ("Nor can Oplus show that

9  any end-user of the accused televisions directly infringed by performing the

10  claimed methods, also a prerequisite of indirect infringement.").  Instead of

11  providing such facts, Oplus accused Vizio of "barely address[ing] Oplus'

12  infringement position," and utterly failed to provide any evidence or factual

13  support showing that the steps of the asserted methods were performed as required

14  to show infringement.  Opposition to Noninfringement MSJ at 6.[3]

15      During the briefing schedule for Vizio's second motion for summary judgment,

16  Oplus moved the Court to compel Vizio to supplement its responses to certain

17  interrogatories and requests for production.  *See* Joint Stipulation Re: Oplus'

18  Motion to Compel Discovery, Doc. No. 156 ("Second Oplus Motion to Compel").

19  Oplus had propounded a discovery request on Vizio seeking identification of all

20  Vizio products using the three chipsets identified in Oplus's infringement

21  contentions; Vizio had responded with a list of several product identification

22  numbers.  *Id*. at 8.  Oplus wanted more: "Oplus requests that VIZIO simply

23  identify ***all*** of its products since 2006 and indicate the video processing chipsets

24  incorporated into each product."  *Id*. at 11 (emphasis added).  Not only was Oplus

25  not entitled to the discovery it sought to compel, *see* Doc. No. 183 at 22–23, but

26

27

28  [3] A review of Oplus's opposition to the motion for summary judgment on infringement shows that Oplus does not even mention several steps of the claimed method, including the performance of the logical operations and Markush group elements.

-8-

1  Oplus had never requested it.  The remaining discovery requests for sales and

2  profit information suffered from the same problem.

3      Oplus's statements in the motion to compel were seriously contradictory and

4  unreasonable.  Oplus's motion requested that the Court compel sales information

5  for "each VIZIO product that uses one of the accused technologies (as determined

6  through VIZIO's supplementation of its response to Interrogatory No. 1)."  *Id.* at

7  28.  And Interrogatory No. 1, according to Oplus, requested information from

8  Vizio for "all of [Vizio']s products since 2006 and indicate the video processing

9  chipsets incorporated into each product."  *Id.* at 12 (emphasis omitted).  Yet Oplus

10 simultaneously contended that it "simply request[ed] sales information ***for the***

11 ***televisions that use the technologies at issue in this case***."  Second Oplus Motion

12 to Compel at 26 (emphasis added).  Since Oplus sought to compel the responses

13 simultaneously, Oplus necessarily sought sales information for all post-2006 Vizio

14 products.

15     On October 2, 2013, the Court granted in part and denied in part Vizio's

16 motions for summary judgment of invalidity, granted in full Vizio's motion for

17 summary judgment of noninfringement, and denied Oplus's motion to compel

18 discovery.  Doc. No. 183.  The Court then entered final judgment in favor of Vizio.

19 Doc. No. 185.

20                        **III.   DISCUSSION**

21 **A.      35 U.S.C. § 285: Exceptional Case**

22     Under 35 U.S.C. § 285, a "court in exceptional cases may award reasonable

23 attorney fees to the prevailing party."  First, the court must determine that the party

24 seeking to recover attorney fees is a prevailing party.  *See Highmark, Inc. v.*

25 *Allcare Health Management Sys., Inc.*, 687 F.3d 1300, 1308 (Fed. Cir. 2012), *cert.*

26 *granted Highmark, Inc. v. Allcare Health Management Sys., Inc.*, 134 S. Ct. 48

27 (2013).  Vizio won a judgment of noninfringement of the asserted claims of the

28 '842 and '840 Patents and won a judgment of invalidity on the '842 Patent.  Vizio

1  is the prevailing party in this litigation.  The prevailing party must then show by

2  clear and convincing evidence that the case is exceptional.  *Id.*

3           **1.**      **Oplus Engaged In Litigation Misconduct**

4       "A case may be deemed exceptional under § 285 where there has been 'willful

5  infringement, fraud or inequitable conduct in procuring the patent, misconduct

6  during litigation, vexatious or unjustified litigation," or other similar infractions.

7  *MarTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916 (Fed. Cir. 2012) (*quoting*

8  *Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321–22

9  (Fed. Cir. 2006)).  "Litigation misconduct alone may suffice to make a case

10  exceptional."  *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359,

11  1366 (Fed. Cir. 2013); *see also Taltech Ltd. v. Esquel Enters. Ltd.*, 604 F.3d 1324,

12  1329 (Fed. Cir. 2010) ("Litigation misconduct and unprofessional behavior are

13  relevant to the award of attorney fees, and may suffice to make a case

14  exceptional.").

15       A finding of litigation misconduct need not rest on an "isolated instance[] of

16  unprofessional behavior."  *Monolithic*, 726 F.3d at 1369.  "An abusive pattern or

17  vexatious strategy that [is] pervasive enough to infect the entire litigation" may

18  constitute litigation misconduct.  *Id.*  Accordingly, the Court must determine

19  whether Oplus's behavior in this case rises to the level of misconduct by

20  considering the totality of the circumstances.  *Cf. Yamanouchi Pharm. Co. v.*

21  *Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347 (Fed. Cir. 2000).  Certainly, the

22  manner and style of Oplus's counsel was offensive to the Court,[4] but that alone is

23  insufficient to find litigation misconduct.

24       //

25       //

26       //

27

28
---
[4] During one hearing, the Court felt compelled to tell Oplus's counsel, "Let me just give you a word of caution here. I don't want you to be quite as aggressive as you have been in addressing the Court."  June 7, 2013 Hearing at 51:2–4.  The Court has rarely been called upon to admonish counsel in this way.

1
            **a.**      **Oplus delayed the litigation by strategically amending its**

2
                    **claims to manufacture venue.**

3
    From the beginning of this case, Oplus flouted the standards of appropriate

4
conduct and professional behavior.  By listing only one additional product from a

5
manufacturer other than Vizio, Oplus provided only the most tenuous basis in its

6
initial complaint for bringing suit in Illinois.  Oplus's first amended complaint took

7
its first step over the boundaries of professionalism.  Oplus specifically removed

8
the allegation of "use" of the patents by defendant Sears.  Because the patents only

9
contained method claims, this selective amendment rendered its allegations against

10
Sears prima facie inadequate.  Yet when Sears and Vizio challenged the

11
appropriateness of the venue, Oplus not only opposed transfer, but asked the MDL

12
panel to return the case to Illinois after it lost.  Certainly, counsel must fight

13
zealously for the rights of its clients,[5] but no ethical canon requires counsel to

14
ignore well-settled law.

15
            **b.**      **Oplus misused the discovery process to harass Vizio by**

16
                    **ignoring necessary discovery, flouting its own obligations,**

17
                    **and repeatedly attempting to obtain damages information**

18
                    **to which it was not entitled.**

19
    At the scheduling conference, Oplus began implementing its abusive discovery

20
strategy: avoid its own litigation and discovery obligations while forcing its

21
opponent to provide as much information as possible about Vizio's products, sales,

22
and finances.  Despite the Court's clear message to Oplus that it would not obtain

23
discovery until it filed infringement contentions, Oplus managed to avoid filing

24
infringement contentions with the Court until June 14, 2013—more than ten

25
months after the initial deadline for infringement contentions.

26

27
_____

28
[5] The Court notes that Oplus's counsel, based in Chicago, stood to benefit from preventing transfer out of the Northern District of Illinois.  Oplus is an Israeli corporation and no evidence suggests that the Northern Illinois forum would have been particularly convenient for Oplus itself.

1    Oplus's delay in providing and filing adequate infringement contentions led to

2    the parties' first discovery dispute.  Vizio refused to produce discovery on

3    infringement without clear contentions allowing Vizio to determine what material

4    might be discoverable.  Oplus's protest, that Vizio should have challenged its

5    infringement contentions earlier on its own motion, was weakened by its own

6    behavior.  Where Oplus had failed to file its infringement contentions, Vizio's

7    failure to challenge those same contentions by motion practice is understandable.

8    Oplus's failure to amend and file its infringement contentions after the Court's

9    ruling on the first motion to compel, however, is less understandable.  Oplus's

10   subsequent subpoena defied the Court's order.  Oplus's belief that a letter sent

11   before the Court's order and never provided to the Court resolved the issue was at

12   best severely misguided and at worst disingenuous and pretextual.

13   Of greatest concern to the Court, however, was Oplus's counsel's subpoena for

14   documents counsel had accessed under a prior protective order.  Oplus disavowed

15   any review and use of confidential information.  Its actions and statements

16   undermine that disavowal.  First, Oplus's statement that the subpoena had been

17   narrowly tailored and only sought a "narrow subset" of the IP Innovation Case

18   discovery directly contradicts Oplus's assertion that it hadn't reviewed confidential

19   information.  If no review had occurred, Oplus could not have known what narrow

20   subset of discovery to seek.  Second, three of the same attorneys for Oplus had

21   worked on the IP Innovation Case.  Even if Oplus's counsel did not use that

22   knowledge to tailor the subpoena's single broad request, Oplus's counsel's

23   knowledge of the contents of Vizio's confidential discovery affected the decision

24   to issue the subpoena.[6]  Oplus did not subpoena files from any other Vizio

25   _____

26   [6] Although Oplus asserts that it has relied only on publically available information, it has clearly not done so.  For example, at a telephonic status conference following the motion to compel, Mr. Gasey confusingly stated that he knew Vizio had certain documents because they had been produced in the IP Innovation Case but that he also hadn't

27   accessed the IP Innovation Case discovery.  See Transcript of June 25, 2013 Telephonic Status Conference, Doc. No. 145 at 7:16:20 ("Well, that was interesting because [the television service manuals were] some of the material

28   that was produced in the [IP Innovation Case].  I can't give you the details on that; but contrary to what [Vizio's counsel] is asserting, we haven't accessed that information.").  Although Oplus provided the pre-trial lists of

-12-

1  litigation, which strongly implies that Oplus's counsel had specific information in

2  mind in making its discovery request.  Oplus's claim that it issued the subpoena

3  without using any knowledge by three attorneys as to the content of the discovery

4  sought simply strains credulity.

5    The discovery strategy of obtaining as much information about Vizio's finances

6  as possible resulted in an inversely proportionate amount of time spent obtaining

7  discovery on the fundamental infringement issues.  Oplus knew throughout the

8  litigation that other methods were available to accomplish deinterlacing and error

9  correction.  During discovery, not only did Oplus decide not to pursue third-party

10 discovery pertaining to the algorithms used by the allegedly infringing products, it

11 refused to sign a protective order to allow Vizio access to such discovery.

12    Oplus's final motion to compel discovery was, like the prior discovery motions,

13 ill-timed, burdensome, and inappropriate.  In its final attempt to gain Vizio's

14 business and financial information, Oplus blatantly misinterpreted its own prior

15 discovery requests in an attempt to obtain the same information the Court had

16 previously refused to compel.  Oplus knew it was not entitled to the information it

17 wanted.  Instead, Oplus requested everything and falsely represented to the Court

18 the scope of its own request.

19           **c.     Oplus used improper litigation tactics including presenting**

20                **contradictory expert evidence and infringement contentions**

21                **as well as misrepresenting legal and factual support.**

22    Standing alone, a party's misrepresentation of the law does not constitute

23 litigation misconduct.  *See MarTec*, 664 F.3d at 920.  Oplus certainly abused and

24 twisted its statements of law to the Court.  In one brief, Oplus quoted a legal

25 standard: "Where a defendant seeks summary judgment of noninfringement,

26 "nothing more is required than the filing of a ... motion stating that the patentee

27

28 evidence in the IP Innovation Case, which listed several television service manuals, a review of the IP Innovation
Case docket shows no publically available information stating that Vizio was the source of the manuals.

-13-

1  had no evidence of infringement and pointing to the specific ways in which

2  accused [products] did not meet the claim limitations." Doc. No. 160 at 5.  In the

3  next breath, Oplus declared that Vizio had "not met its burden" because Vizio did

4  not know how the accused products work and could therefore not point out the

5  required deficiencies. *Id*. at 6.  Oplus wanted the Court to believe that the issue of

6  knowledge of the infringing device was settled law, when it was not so at all.  And

7  Oplus consistently twisted the Court's instructions and decisions.[7]  Clever wording

8  and implication cannot conceal Oplus's attempts to mislead the Court.

9       Moreover, Oplus perpetuated this same abuse on the facts it submitted in

10  support of its motions.  Oplus regularly cited to exhibits that failed to support the

11  propositions for which they were cited.  Oplus's disavowal of its own expert's

12  statement when Vizio cited the paragraph, rather than the paragraph heading, is

13  merely one example of Oplus's strategic manipulation of the facts and evidence

14  provided to the Court.  Oplus also employed another strategy for avoiding

15  undesirable facts: ignore them.  When Oplus had no evidence of infringement of

16  one element of a claim, it simply ignored that element and argued another.

17       Additionally, Oplus's malleable expert testimony and infringement contentions

18  left Vizio in a frustrating game of Whac-A-Mole throughout the litigation.  One

19  expert popped up to contradict Vizio on one motion: an absolute value of a linear

20  combination is a linear combination.  As that expert disappeared, the next expert

21  popped up, saying that the first expert could not have meant what he said.  Oplus's

22  infringement contentions cite a patent to show infringement, yet their expert

23  testifies that the same patent did not disclose the methods of Oplus's patents.

24       Oplus's other stunts, like unilaterally filing the initial joint status report and not

25  consulting Vizio before issuing the subpoena, only further fueled the harassing and

26

---

27  [7] Oplus's delay in filing infringement contentions and Oplus's portrayal of this Court's so-called "rogue" order are
two examples of Oplus's misinterpretations of the Court's words.  At the June 7, 2013 hearing, the Court, frustrated

28  with Oplus's inability to correctly follow its instructions, asked Oplus's counsel twelve separate times if Oplus
understood or was unclear about various statements made by the Court. *See* June 7, 2013 Hearing.

1   vexatious nature of the litigation.  Oplus's tactics in this litigation have been

2   vexatious and meet the standard for litigation misconduct.

3         **2.      Oplus's Claims Against Vizio Were Not Objectively Baseless**

4        The court can alternatively award attorney fees "if the litigation is both: (1)

5   brought in subjective bad faith; and (2) objectively baseless." *MarTec*, 664 F.3d at

6   916.  An objectively baseless position must have no objective foundation. *Id*.  The

7   bad faith standard is equally stringent, requiring both that "no reasonable litigant

8   could expect success on the merits" and that "lack of objective foundation for the

9   claim was either known or so obvious that is should have been known by the party

10  asserting the claim." *Highmark*, 687 F.3d at 1309 (quotations omitted).

11       Oplus's allegations against Vizio, at the time of the filing of the complaint,

12  were not objectively baseless.  Although Oplus knew that Vizio claimed to be

13  unaware of the signal processing methods employed in its television, as required

14  for indirect infringement, Oplus did not know that Vizio had discontinued all of the

15  allegedly infringing televisions prior to the filing of its complaint.  Vizio itself did

16  not make the Court aware of this fact until at least a year into the litigation.  Oplus

17  included proper allegations of both direct and indirect infringement.  The Court

18  ultimately disagreed with Oplus's argument that Vizio could be liable for indirect

19  infringement without knowledge of its products' signal processing methodology,

20  but the argument had a reasonable basis in fact and law.

21       Oplus's allegations against Sears were objectively baseless at the time Oplus

22  filed its first amended complaint.  Since the case against Sears remains pending in

23  the Northern District of Illinois, however, that forum would be the most

24  appropriate venue in which to seek sanctions for claims against Sears. *See, e.g.*,

25  *Highmark*, 687 F.3d 1300, 1319 (Fed. Cir. 2012).

26      //

27      //

28      //

-15-

1          **3.      The Court Determines That An Award Of Attorney Fees Under**
2                    **35 U.S.C. § 285 Is Not Appropriate In This Case**

3          Since the Court deems this case exceptional due to Oplus's litigation

4    misconduct, the court must determine, in its discretion, if an award of attorney fees

5    is appropriate and the amount of the award. *Id*. at 1308.  The amount of the award

6    must "take into account the particular misconduct involved." *Beckman*

7    *Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989).

8    Any award is remedial in nature and should compensate the prevailing party when

9    failing to shift fees would be a gross injustice. *Kilopass Tech., Inc. v. Sidense*

10   *Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013).  Further, an award under § 285

11   should only include expert witness fees if the court determines that attorney fees

12   alone are "insufficient to sanction the patentee." *MarTec*, 664 F.3d at 921.

13         The Court declines to award attorney fees to Vizio for Oplus's litigation

14   misconduct.  Although Oplus's behavior has been inappropriate, unprofessional,

15   and vexatious, an award of attorney fees must take the particular misconduct into

16   account.  This case has been fraught with delays and avoidance tactics to some

17   degree on both sides.  However, Vizio is right in using Oplus's inconsistent

18   statements to strengthen its arguments on summary judgment.  At each step of the

19   case, Vizio's credibility inevitably increased while Oplus gathered rope to hang

20   itself.

21         Other than the three discovery motions, each instance of motion practice

22   occurred according to normal litigation practice.  There is little reason to believe

23   that significantly more attorney fees or expert fees have been incurred than would

24   have been in the absence of Oplus's vexatious behavior.  Oplus alleged sufficient

25   facts to support its claims, gathered limited discovery, and lost on summary

26   judgment, as it would have even without its misconduct.  As to the three discovery

27   motions, Vizio itself brought and won one of the three discovery motions.  At no

28   point did the parties seek discovery sanctions under Fed. R. Civ. Proc. 37.  The

1    Court further believes that, given the confusing state of contention filings and

2    discovery, the first two discovery requests were substantially justified under the

3    rule.

4        Ultimately, the Court must determine if an award of fees is appropriate under

5    the statute.  Given that the litigation followed an expected course of motions

6    practice, and that discovery sanctions were available to Vizio, there is no gross

7    injustice in failing to award of attorney fees in this case.  The Court, in its

8    discretion, therefore declines to award attorney fees and expert fees to Vizio.

9    **B.      28 U.S.C. § 1927: Attorney Sanctions**

10       Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings

11   in any case unreasonably and vexatiously may be required by the court to satisfy

12   personally the excess costs, expenses, and attorneys' fees reasonably incurred

13   because of such conduct."  In order to impose sanctions under § 1927, counsel

14   must have acted with bad faith.  *See Baldwin Hardware Corp. v. FrankSu*

15   *Enterprise Corp.*, 78 F.3d 550, 561 (Fed. Cir. 1996); *New Alaska Dev. Corp. v.*

16   *Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989).  "Bad faith is present when an

17   attorney knowingly or recklessly raises a frivolous argument or argues a

18   meritorious claim for the purpose of harassing an opponent."  *Trulis v. Barton*, 107

19   F.3d 685, 694 (9th Cir. 1995) (quotations omitted).  "For sanctions to apply," a

20   filing must either be frivolous and submitted recklessly or "be intended to harass."

21   *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996).  "Thus, . . .

22   reckless nonfrivolous filings, without more, may not be sanctioned."  *Id.*

23       As discussed with respect to 35 U.S.C. § 285, although Oplus unquestionably

24   pursued a vexatious and harassing litigation strategy, no single filing was clearly

25   frivolous or employed with the purpose of harassing Vizio.  Although the Court

26   has ample evidence of Oplus's litigation misconduct, there is no evidence

27   suggesting that Oplus's behavior stemmed from bad faith or a sufficient intent to

28   harass.  Instead, Oplus pursued a weak case in a manner that was overly

1  aggressive, uncooperative, and outside the boundaries of professional behavior.

2  The proper tool to sanction behavior of this kind is found in the Federal Rules of

3  Civil Procedure and the patent fee shifting statute, not 28 U.S.C. § 1927.

4  **C.      The Court's Inherent Power to Sanction Misconduct**

5        Under its inherent power, a federal court may sanction attorney or party

6  misconduct by "assess[ing] attorney's fees when a party has acted in bad faith,

7  vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501

8  U.S. 32, (1991).  In addition, the court may award expert fees as a sanction against

9  a party who has litigated vexatiously or in bad faith.  *Takeda Chem. Indus., Ltd. v.*

10 *Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008).

11       Where, as here, other tools for sanctioning behavior exist and apply to the

12 party's misconduct, it would be a mistake for the Court to use its inherent power.

13 "[T]he court ordinarily should rely on [statutory authority] rather than inherent

14 power." *Chambers*, 501 U.S. at 50.  "Use of this inherent authority is reserved for

15 cases where the district court makes a finding of fraud or bad faith whereby the

16 very temple of justice has been defiled," *MarTec*, 664 F.3d at 921 (quotations

17 omitted), or when statutory authority does not provide an adequate sanction, *see*

18 *Chambers*, 501 U.S. at 50.  Because the Court has declined to award sanctions

19 under its statutory authority, the Court has no need to exercise its inherent power.

20                          **IV.    CONCLUSION**

21       The Court finds that clear and convincing evidence supports the finding that

22 Oplus and its counsel engaged in a vexatious litigation strategy constituting

23 litigation misconduct.  However, in its discretion, the Court declines to award

24 attorney fees under 35 U.S.C. § 285.  The Court denies Vizio's Motion for

25 Attorneys' Fees and Expert Witness Fees.

26       //

27       //

28       //

1      IT IS SO ORDERED.

2

3  DATED: February 3, 2014      _____

4                              Hon. Mariana R. Pfaelzer
                                 United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28